THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY GRIGNON *et al.*, Defendants-Appellants.

Second District (1st Division)    No. 74-153

Opinion filed April 20, 1976.

Ralph Ruebner and Ira A. Moltz, both of State Appellate Defender's Office, of Elgin, for appellants.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The defendants were tried before a jury which found them guilty of armed robbery and they were each sentenced to a term of 5 to 15 years' imprisonment. On appeal, they contend (1) that defendant Erickson's conviction violates the constitutional prohibition against double jeopardy; (2) that the defendants were not proven guilty beyond a reasonable doubt; (3) that the trial court erred in admitting business records without a proper foundation; (4) that the trial court erroneously instructed the jury; (5) that certain closing remarks of the prosecutor denied the defendants a fair and impartial trial; and (6) that, in sentencing the defendants, the trial court considered improper evidence of prior acts of misconduct. After a thorough review of the record, we conclude that none of these contentions is well founded and therefore affirm the judgments.

The defendants, Gary Grignon and David Erickson, were indicted on February 7, 1973, for the offense of armed robbery. The indictment alleged that on December 26, 1972, the defendants, by threatening the use of force or by the use of force and while armed with a pistol, took money from the person or presence of John A. Wilson. Ill. Rev. Stat. 1971, ch. 38, par. 18—2.

On October 15, 1973, a mistrial was declared in the defendants' joint trial after the following testimony was heard by the jury.

"ASSISTANT STATE'S ATTORNEY: Q. Now, Mr. Pennewell, what conversation, if any, did you have that you recall with Mr. Erickson?

A. Do you want this in my own words?

Q. The best you can recall.

A. With Mr. Erickson or Mr. Grignon or both?

Q. Both. Well, you have to tell who said what.

MR. EISENBERG: I object, Your Honor, unless he testifies it was in the presence of Mr. Erickson.

THE COURT: I think that has been established. Didn't you already say both of these parties were present?

THE WITNESS: Yes, sir, I did.

MR. EISENBERG: Okay. Thank you, Your Honor.

A. Well, we was talking about one thing and another and I was asking Mr. Grignon what he was doing back from California. I understood he was on probation or parole.

MR. BEU: Excuse me, Your Honor. May I be heard in chambers?"

Immediately thereafter at the *in camera* discussion, counsel for defendant Grignon asked for a mistrial, which was granted by the trial court. Counsel for defendant Erickson presented alternative motions that either the charge be dismissed against his client on grounds of double jeopardy or that the trial of his client continue. In response, the State asked that the court declare a mistrial as to defendant Erickson. The court, stating that some members of the jury might believe that the witness' statement referred to Erickson, denied defense counsel's motions and declared a mistrial as to Erickson as well.

At the second trial, which commenced on November 19, 1973, the State called Roger Reay, central office foreman for the Wisconsin Telephone Company at Beloit. Mr. Reay testified that he was responsible for the maintenance and custody of all telephone trace records, and he explained how a telephone trace is performed. The witness testified that on December 26, 1972, a telephone trace was performed at the request of South Beloit police officers, and he produced the records which were prepared in connection with that trace. He further testified that these records were made in the usual and ordinary course of business and were maintained by himself. Then, Mr. Reay testified that the trace records indicated that a call had been made to the Owens Oil Station (the robbery site) from a public phone booth located near the Owens station. The witness further related the time and manner of the preparation of the particular trace records involved in this case, and testified that he supervised the individual who made this particular trace. At the conclusion of Mr. Reay's testimony, the trace records were admitted into evidence without objection by defense counsel.

Next, John Wilson, the victim of the armed robbery and the assistant manager of the Owens Oil Station, which was the scene of the offense, was called as a witness on behalf of the State. He testified that on December 26, 1972, at approximately 9:30 p.m., he was working alone at the Owens Oil Station and that he was seated at a desk inside the station.

According to the victim's testimony, he saw a person walk from the east side of the station toward the door, and he left his desk proceeding to the door. He testified that the person, who he had not known previously, called him by his nickname. He stated that the person was not masked and that the station was well lighted with fluorescent lighting. This person was identified in court by the victim as defendant Grignon. According to John Wilson's testimony, defendant Grignon then produced a revolver, told him to "get in the drawer" and get the money. While the robbery was occurring, the telephone in the station rang, and Grignon ordered him to answer it. The victim testified that upon answering the telephone, there was no response from the person who had placed the call to the Owens station. He further described the telephone cord as a wire cable, which could not be cut easily.

The witness stated that he gave Grignon $656 and that the defendant then left the station. The victim testified that a small revolver was used by Grignon, and upon being shown People's Exhibit No. 4, he stated that it looked like the gun used in the robbery.

Immediately after Grignon left the Owens Oil Station, John Wilson tried to call the police, but the telephone was dead. He then proceeded to a home located next to the Owens station from where he called the police.

In response to further questioning, the witness testified that he had been acquainted with David Erickson for 8 or 9 years, but had not seen him for a year until several days prior to the robbery, when Erickson entered the Owens Station. According to the witness' testimony, on that occasion, Erickson purchased cigarettes, talked to him for a minute, and left the station in a car in which another person had been waiting. John Wilson was unable to identify the person who had been waiting outside the station for Erickson on that occasion.

On cross-examination, John Wilson testified that after the robbery, the police had shown him two photographs and that he immediately identified Grignon from one of the photographs. He stated that he was not very familiar with handguns. In response to defense counsel's inquiries, the victim testified that he did not know why his brother, Robert Wilson, had indicated to police officers that he feared that either he or John Wilson might be implicated in the robbery.

The third witness called on behalf of the State was Charles Phillips of the South Beloit Police Department who testified that when he arrived at the Owens Oil Station he noticed that the telephone was off the hook, and was informed by John Wilson that he had received a call during the robbery and that the line was dead. Officer Phillips then ordered a telephone trace and proceeded to the location of the public phone that had the "line open" with the Owens phone. This public phone booth was seven-tenths of a mile from the Owens station. Officer Phillips

also testified that the victim was shown two photographs and identified Grignon as the robber.

Robert Wilson, the brother of the victim, testified that he had been acquainted with David Erickson for 13 or 14 years. He stated that at approximately 4 a.m. on December 26, 1972, he received a telephone call from defendant Erickson, and that during their telephone conversation, Erickson said that he had recently returned from California. Later, at 4:30 or 5 p.m., Robert Wilson again received a telephone call from Erickson, who inquired whether Robert Wilson knew if a certain store had much cash. The witness testified that he told Erickson that he did not know if that store had cash and that he then jokingly suggested McDonald's as a source of cash. To this suggestion, Erickson said, "No, they're too busy," and asked Wilson about the Owens Oil Station. The witness testified that he told Erickson not to rob Owens because his brother was employed there. According to the witness, Erickson responded, "Okay, don't worry about it." Robert Wilson further testified that after he had heard that the Owens Station had been robbed, he gave the police a statement which related the telephone conversations with Erickson.

On cross-examination, Robert Wilson stated that prior to the telephone call on December 26, 1972, he had not heard from Erickson since 1966. The witness admitted that in 1967 he had been convicted of robbery. He also stated that prior to the time he learned of the robbery of the Owens Station, he had not discussed the telephone call he received from Erickson with anyone. In response to counsel's inquiries, the witness asserted that he did not recall indicating to the police that he feared that either he or his brother might be implicated in the robbery.

The next witness, Rebecca Scott, testified that she had met both of the defendants on December 25, 1972, while they were at the home of her boyfriend, Richard Pennewell, where she also resided. Ms. Scott testified that she and Richard Pennewell own a Colt detective special .38-caliber pistol, which she identified as People's Exhibit No. 4. During the course of their visit at the Pennewell home, the defendants asked if they could see the gun, and Mr. Pennewell took it from a dresser drawer in the bedroom, and showed it to them. According to the witness' testimony, the gun was loaded with five shells at that time. After the defendants looked over the gun, it was returned to its place in the dresser drawer.

During the afternoon on the following day, December 26, 1972, defendant Grignon returned to the Pennewell home and asked if he could use their telephone. When he was directed to the telephone located in the kitchen, Grignon stated that he would rather use the phone located in the bedroom. While he was talking on the bedroom telephone, no one else was present in that room. However, when Ms. Scott looked into the bedroom from where she sat in the living room, she observed Grignon

putting some object into his coat or pants. Immediately thereafter, Grignon left the premises. Further, the witness testified that shortly thereafter she discovered that the gun was missing and reported its disappearance to the police.

Anna Erickson, the estranged wife of defendant David Erickson, testified that prior to December, 1972, she, defendant Erickson, and defendant Grignon resided in Fresno, California. She testified that she left Fresno, California, on November 30, 1972, and returned to Beloit, Illinois. Approximately 1 week before the robbery occurred, she received a telephone call from her husband who told her that he had returned to Beloit.

On December 26, 1972, Anna Erickson had been visiting with Linda Grignon, who is the sister of defendant Erickson and the former wife of defendant Grignon, and their children. At approximatelyy 6:30 p.m., the defendants arrived at Linda Grignon's house. The witness testified that at this time, she saw defendant Grignon with a gun, which she stated could have been the same gun as People's Exhibit No. 4. According to the witness' testimony, defendant Erickson had the bullets for the gun. The defendants left the home of Linda Grignon together at approximately 7:30 p.m.

Next, Linda Grignon, the former wife of Gary Grignon and the sister of David Erickson, testified. Her testimony essentially corroborated that of Anna Erickson. She also saw that defendant Grignon had a gun and that defendant Erickson had some bullets.

The next witness called on behalf of the State was Kenneth Fry, the uncle of defendant Grignon, who resided in Necedah, Wisconsin. He testified that at 5 a.m. on December 28, 1972, he received a phone call from his nephew, Gary Grignon, and he proceeded to a restaurant, where he met his nephew, who was accompanied by David Erickson. After having breakfast, Mr. Fry drove the defendants to a motel in Necedah, Wisconsin.

On the following morning, Mr. Fry drove to the motel, picked up the defendants, and proceeded to a restaurant. During the ride to the restaurant, the witness saw that defendant Grignon had a .38-caliber pistol tucked underneath his belt. According to the witness' testimony on direct examination, he asked his nephew to lock the gun in the glove compartment of Fry's car, and Grignon complied with his uncle's suggestion. Thereafter, Mr. Fry called local police authorities concerning the gun and delivered it to their custody.

On cross-examination, Mr. Fry stated that it was Grignon who suggested that the gun be left with Mr. Fry. He also testified that he did not see defendant Erickson with either a gun or bullets.

Paul Reich, the chief of police of Necedah, Wisconsin, testified that he went to the home of Kenneth Fry in response to a phone call from Mr. Fry, and obtained custody of a gun, which he identified as People's Exhibit No. 4. The witness stated that he then delivered the pistol to Eldon Chase, the sheriff of Juneau County, Wisconsin.

Eldon Chase, the final witness called by the State, testified that on December 30, 1972, he and three deputies proceeded to a Necedah, Wisconsin, motel where they arrested Grignon and Erickson. The witness testified that at the time of the arrest neither of the defendants was armed, although five .38-caliber shells were found in a jacket belonging to one of the defendants. According to the witness' testimony, when he arrested the defendants, they had only a small amount of currency.

The defense called Billy Burgess, a detective for the Winnebago County sheriff's police, who testified that on December 28, 1972, while taking Robert Wilson's statement, Wilson expressed a fear that either he or his brother might be implicated in the robbery. Burgess testified that he told Robert Wilson that in his opinion, the evidence would not inculpate Robert and John Wilson.

No other witnesses were called on behalf of the defendants, and after closing arguments, the jury found both defendants guilty of armed robbery. Subsequently, they were sentenced to a term of 5 to 15 years' imprisonment.

On appeal, defendant Erickson contends that his conviction violated the constitutional prohibition against double jeopardy. He argues that the testimony at the first trial referring to defendant Grignon's parole or probation was not prejudicial to Erickson, and that consequently, there was no manifest necessity in declaring a mistrial as to him. Further, Erickson argues that since the court improperly declared a mistrial after the jury was impaneled and jeopardy attached, the second trial constituted a violation of his constitutional protection against double jeopardy. We note that the defendant concedes that the testimony referring to Grignon's parole or probation was not intentionally solicited by the prosecutor.

■■ A trial court may properly declare a mistrial over the defendant's objection when "manifest necessity" or "the ends of public justice" requires him to do so. (*United States v. Perez* (1824), 22. U.S. (9 Wheat.) 579, 6 L. Ed. 165; *Illinois v. Somerville* (1973), 410 U.S. 458, 35 L. Ed. 2d 425, 93 S. Ct. 1066.

> "Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent

and even over his objection, and he may be retried consistently with the Fifth Amendment." (*Gori v. United States* (1961), 367 U.S. 364, 368, 6 L. Ed. 2d 901, 904, 81 S.Ct. 1523.)

In *Illinois v. Somerville* (1973), 410 U.S. 458, 35 L. Ed. 2d 425, 93 S.Ct. 1066, the court, after quoting its language in *Gori*, stated,

"A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal * * *." *Illinois v. Somerville* (1973), 410 U.S. 458, 464, 35 L. Ed. 2d 425, 431, 93 S.Ct. 1066.

■■■ In the case at bar, after carefully reviewing the testimony which produced the situation and the *in camera* discussion which followed, we conclude that the trial court did not abuse its discretion in declaring a mistrial as to defendant Erickson. It is well established that testimony referring to the probation or parole of a defendant may be so prejudicial as to warrant a reversal. (*People v. Smith* (1973), 12 Ill. App. 3d 1037, 299 N.E.2d 489; *People v. Pitts* (1971), 1 Ill. App. 3d 120, 273 N.E.2d 664; *People v. Colston* (1967), 81 Ill. App. 2d 75, 225 N.E.2d 801.) Further, the courts have frequently held that the prejudicial effect of this testimony cannot be cured by a cautionary instruction to the jury to disregard the statement. (*People v. Smith* (1973), 12 Ill. App. 3d 1037, 1041, 299 N.E.2d 489; *People v. Pitts* (1971), 1 Ill. App. 3d 120, 124, 273 N.E.2d 664.) While the testimony as revealed in the transcript establishes that the witness' comment referred to defendant Grignon, the preceding testimony focused the jury's attention on the witness' conversation with *both* defendants. In this context, we agree with the trial court's ruling that some members of the jury may have believed that the witness' prejudicial statement referred to defendant Erickson.

Moreover, once a mistrial had been declared as to defendant Grignon, the absence of Grignon during a continuation of the trial of Erickson may have further confused and prejudiced the jury. Under these circumstances, we conclude that the manifest necessity requirement for declaring a mistrial was met, since the trial court "could reasonably have concluded that the 'ends of public justice' would be defeated by having allowed the trial to continue." (*Illinois v. Somerville* (1973), 410 U.S. 458, 459, 35 L. Ed. 2d 425, 428, 93 S. Ct. 1066.) Therefore, since the mistrial was properly declared, the second trial of defendant Erickson did not violate the constitutional prohibition against double jeopardy.

Next, the defendants contend that they were not proven guilty beyond a reasonable doubt. Defendant Erickson contends that the State did not prove beyond a reasonable doubt that he participated in the robbery. He argues that the State's theory, that he placed the phone call which deadened the Owens station phone, was not proven beyond a reasonable

doubt. Further, Erickson asserts that the testimony of Robert Wilson relating the conversation during which Erickson discussed robbing the Owens station is incredible because this witness was seriously impeached.

The Criminal Code of 1961 provides that:

"A person is legally accountable for the conduct of another when:

\* \* \*

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. \* \* \*." Ill. Rev. Stat. 1973, ch. 38, par. 5—2(c).

The State's case against David Erickson is not solely dependent upon proving that he placed the phone call which deadened the Owens station phone. Rather, the crux of the State's case against David Erickson is the testimony of Robert Wilson which tended to establish that before the robbery, with the intent to promote or facilitate the robbery, David Erickson aided Gary Grignon in the planning of the offense. Although Robert Wilson was impeached through the admission of his prior conviction and his statement indicating his fear of being implicated in the robbery, his testimony, relating the conversation with Erickson during which Erickson specifically discussed robbing the Owens station, is uncontradicted.

■■ It is the function of the jury to weigh the testimony and judge the credibility of the witnesses. A court of review will disturb the jury's finding only when the evidence is so unreasonable or improbable as to justify a reasonable doubt of the defendant's guilt. (*People v. Nicholls* (1969), 42 Ill. 2d 91, 95, 245 N.E.2d 771; *People v. Crews* (1967), 38 Ill. 2d 331, 335, 231 N.E.2d 451.) In view of the testimony of Robert Wilson, coupled with the circumstantial evidence of the close association of Erickson and Grignon before and after the robbery and the evidence of the phone call during the robbery which deadened the Owens station phone, we cannot conclude that the jury's finding of guilty is unreasonable.

Defendant Grignon also contends that he was not proven guilty beyond a reasonable doubt. He argues that the photographic identification of him by the victim was suggestive and that this photographic identification procedure tainted the in-court identification. Further, Grignon argues that the victim, John Wilson, was not a credible witness.

■■ After reviewing the record, we conclude that even if we assume that the photographic identification were suggestive, a sufficient independent basis of identification to sustain the in-court identification was established. (*People v. Rodgers* (1972), 53 Ill. 2d 207, 213, 290 N.E.2d

251; *People v. Hayes* (1972), 52 Ill. 2d 170, 174, 287 N.E.2d 465.) The victim, John Wilson, testified that he had observed defendant Grignon walking toward the station and entering the station. During the robbery, he stood approximately 2 feet from the robber, who was positioned face-to-face with him. The station was well lighted, with fluorescent lighting and the robber was not masked in any way. In view of the excellent opportunity to observe the defendant during the commission of the crime, we conclude that the in-court identification of Grignon by the victim was of independent origin, unrelated to any allegedly suggestive photographic identification procedure.

Defendant Grignon further argues that the victim, John Wilson, was not a credible witness. It is the function of the trier of fact to judge the credibility of the witness, and where the identification of the defendant is at issue, "the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made." (*People v. Stringer* (1972), 52 Ill. 2d 564, 569, 389 N.E.2d 631.) After examining the record, we conclude that the evidence is not so unreasonable, improbable, or unsatisfactory as to leave a reasonable doubt of defendant Grignon's guilt.

■■ Next, the defendants contend that the trial court erred in admitting the telephone trace records allegedly without a proper foundation. While defense counsels failed to object to the admission of these records when specifically asked by the trial judge if they objected, it is urged that this constituted plain error which affects the substantial rights of defendant Erickson, and that therefore, we should consider this error on review. In support of this contention, the defendants argue that the telephone trace records are the only evidence connecting Erickson with the crime. We disagree. A review of the record demonstrates that John Wilson testified that during the armed robbery, a phone call was made to the Owens stations. Also, Officer Phillips testified that upon arriving at the scene of the offense, he found that the telephone was disabled. The only further evidence established by the admission of the telephone trace records was the location of the phone from which the call to the Owens station had been made. In view of this other evidence tending to establish that another person, operating in conjunction with the actual holdup man, placed a call to disable the Owens station phone, we cannot conclude that the admission of the telephone trace records constituted plain error which affects substantial rights of the defendant.

■■ Moreover, the record discloses that a proper foundation for the telephone trace records was established by the testimony of Mr. Reay. Unlike the facts in *People v. Gauer* (1972), 7 Ill. App. 3d 512, 288 N.E.2d 24, cited by the defendants, here, the testimony of Mr. Reay established

the manner in which a trace is made, the manner in which the records are prepared, and the time and manner of the preparation of the particular trace records involved in this case. The trustworthiness of the trace records in the case at bar was established.

■■ The fourth issue raised on appeal is that the trial court erred in giving People's Instruction No. 10 and in refusing Defendant Grignon's Instruction No. 1. People's Instruction No. 10 reads as follows:

> "To sustain the charge of armed robbery, the State must prove the following propositions:
>
> That the defendant, or another person for whose conduct the defendant is legally responsible, took money from the person or presence of John Wilson; and
>
> That the defendant, or another person for whose conduct the defendant is legally responsible, did so by the use of force or by threatening the imminent use of force; and
>
> That the defendant, or another person for whose conduct the defendant is legally responsible was armed with a dangerous weapon.
>
> If you believe from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you shall find the defendant not guilty."

By the insertion of the words, "or another person for whose conduct the defendant is legally responsible," the State modified Illinois Pattern Jury Instruction—Criminal 14.02. At the conference on instructions, the court reserved its ruling until the following morning when counsel for defendant Grignon tendered the following instruction:

> "To sustain the charge of armed robbery, the State must prove the following propositions as to each defendant:
>
> That a defendant, or another person for whose conduct that defendant is legally responsible, took money from the person or presence of John Wilson; and
>
> That a defendant, or another person for whose conduct that defendant is legally responsible, did so by the use of force or by threatening the imminent use of force; and
>
> That a defendant, or another person for whose conduct that defendant is legally responsible was armed with a dangerous weapon.
>
> If you believe from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable

doubt, then you should find the defendant or defendants against whom the propositions have been so proved to be guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant or defendants against whom the propositions have not been so proved to be not guilty."

The State objected to Grignon's instruction, and counsel for defendant Erickson expressed his preference for the State's tendered instruction. The court refused Grignon's Instruction No. 1 and gave People's Instruction No. 10.

Defendant Grignon argues that under the given instruction, the jury was not given the option of finding defendant Grignon not guilty. We cannot agree with the defendant's argument.

"Instructions are to be considered as a whole and not singly. Where the series of instructions, considered together, correctly state the applicable law, a party may not single out one, which standing alone, might itself be inaccurate." (*People v. Juve* (1969), 106 Ill. App. 2d 421, 427, 245 N.E.2d 293.) In the case at bar, the jury was well informed that each defendant had to be proven guilty beyond a reasonable doubt. People's Instruction No. 6 instructed the jury that *each* defendant is presumed innocent and that the State had the burden of proving the guilt of a defendant beyond a reasonable doubt. Further, People's Instruction No. 7, as given to the jury, states:

"You should give separate consideration to each defendant. Each is entitled to have his case decided on the evidence and the law which is applicable to him.

Any evidence which was limited to one defendant should not be considered by you as to any other defendant."

In addition, People's Instruction No. 9 correctly defined when a person is legally responsible for the conduct of another. Considering these instructions as a whole, we cannot conclude that the jury was in any manner whatsoever misled by People's Instruction No. 10. Rather, the jury was instructed to give separate consideration to each defendant, and in so doing they applied the instruction separately to each defendant.

Next, the defendants contend that certain remarks of the prosecutor made during closing argument were unduly prejudicial and denied them a fair and impartial trial. Specifically, the defendants argue that three statements, which follow, constitute plain error. After presenting a summary of the State's evidence against the defendants, the prosecutor stated:

"Now, let's look for a minute at the defense. What defense?"

Later, in rebuttal to the oral argument of defense counsel, which

attempted to inculpate the victim of the armed robbery, the prosecutor said:

"That is the defense tactic, ladies and gentlemen. 'If you don't believe I am innocent and the other guy guilty, then let's believe the victim of the crime is guilty and that he is the criminal and that the criminals are the victims.'

Isn't that about the pitch they have given you here? It isn't a new pitch. It is a defense tactic, a gimmick, so that if you can't put on a logical defense for your clients then let's try somebody else. Let's shift the jury's attention away from these guys who are charged with the crime and let's get them to thinking that somebody else might have done it; maybe the victim stole the money; maybe they are victims of circumstances.

Well, let's look at that for a minute."

Again, in rebuttal to defense counsel's oral argument, the prosecutor stated:

"They say that the evidence is that the defendants—this is Mr. Kuemmel again—that the defendants stayed around town for about 30 or so hours before they left town. There isn't any evidence of that. The only evidence is that we don't know where they were for 32 hours. It was 5:00 or 5:30 in the morning of the 28th, I believe it is, when Mr. Fry hears from them. We don't know where they were in the meantime. They could have been anyplace. They would have been buying plane tickets or they could have been gambling. It doesn't take long to go through $300.00 if each of them has $300.00.

And remember, they didn't get arrested until the 30th. That's a couple more days.

No, I can't prove where the money went. Maybe they had it stashed. Maybe the officers over there didn't look hard enough to find it. I can't prove what they did with the money, but that doesn't prove they didn't commit an armed robbery. * * *"

No objection was made by either defense counsel to these closing remarks of the prosecutor. However, where the prosecutor's comments are so prejudicial as to deprive the defendant of a fair trial, they will be considered on appeal even though not objected to at trial. *People v. George* (1971), 49 Ill. 2d 372, 381, 274 N.E.2d 26; *People v. Del Genio* (1973), 10 Ill. App. 3d 437, 444, 294 N.E.2d 78.

■■ From a review of the entire record, we cannot conclude that the remarks of the prosecutor were such that "they represented a material factor in the conviction and that the verdict would have been different had the comments been unsaid." (*People v. Nicholls* (1969), 42 Ill. 2d 91, 100, 245 N.E.2d 771.) In the context in which the prosecutor's remarks

were made, they were entirely proper. It is entirely proper for a prosecutor to analyze the defense. The defendants' reliance on *People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19, where the prosecutor referred to the defense strategy as a "tactic," is misplaced. In *Stock*, this remark was coupled with the prosecutor's accusation of defense counsel of suborning perjury and the prosecutor's comment on the failure of the defendants to testify. In the case at bar, the prosecutor's reference to the defense strategy as a "tactic" was a legitimate comment on the defense presented in closing argument, in which defense counsel attempted to inculpate the victim. Further, the prosecutor's comment on the fact that the money taken in the robbery was not found in the defendants' possession at the time of their arrest and the prosecutor's comments on this matter did not mislead the jury or introduce matters not in evidence. Rather, the prosecutor clearly stated: "No, I can't prove where the money went." We cannot conclude that these comments denied the defendants a fair and impartial trial.

■■ As a final contention, the defendants contend that at their sentencing hearing the trial court considered improper evidence of prior misconduct which had not resulted in convictions. The evidence of both defendants' prior acts of misconduct which had not resulted in convictions was contained in their presentence reports. At the sentencing hearing, counsel for defendant Grignon referred to the presentence report, but did not object to its contents. Likewise, counsel for defendant Erickson referred to the presentence report, noted that several of the charges listed in the report had been dismissed, but did not object in any manner whatsoever to the contents of the presentence report. The record further discloses that the State's Attorney did not comment on the contents of the presentence reports, but only referred to the presentence reports by title in stating that he had no evidence to present except the reports. Moreover, there is no indication that the trial court relied to any extent whatsoever on the prior acts of misconduct which had not resulted in convictions, as set forth in the presentence reports.

After carefully examining the record, we conclude that the defendants' contention that the trial court relied on improper evidence of prior acts of misconduct, which had not resulted in convictions, is not supported by the record. The record fails to demonstrate that the court relied on the allegedly improper evidence in sentencing the defendants. In such circumstances, we conclude that the court was not unduly influenced by any allegedly incompetent evidence contained in the presentence reports. (*People v. Fuca* (1969), 43 Ill. 2d 182, 186, 251 N.E.2d 239.) Moreover, the material in the presentence report, which the defendants contend was erroneously relied on by the court in sentencing the defendants, was not objected to by defense counsel at the sentencing hearing. A defendant

may not permit evidence to be admitted without objection and urge error in the admission and consideration of such evidence for the first time on appeal. (*People v. Sweeney* (1969), 114 Ill. App. 2d 81, 86, 87, 251 N.E.2d 897; *People v. Jennings* (1967), 84 Ill. App. 2d 33, 43, 228 N.E.2d 566.) We therefore affirm the judgments of conviction.

Affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.