THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THEODORE THIBUDEAUX, Defendant-Appellant.

First District (5th Division)    No. 78-1736

Opinion filed June 26, 1981.—Rehearing denied August 21, 1981.

Ralph Ruebner and Edwin R. McCullough, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury found defendant guilty of attempt armed robbery and burglary, he was sentenced to concurrent terms of from 6 to 20 years. On appeal, he contends that (1) he was prejudiced by not being permitted to interview a prosecution witness; (2) the trial court erred (a) in denying him a continuance following the State's filing of a supplemental discovery answer, (b) in denying a defense motion to prevent the State from impeaching defendant with prior convictions, and (c) in restricting the scope of cross-examination of a prosecution witness; (3) the prosecutor's opening statement improperly referred to certain evidence; (4) the State failed to establish an adequate foundation for the admission of certain fingerprint evidence; (5) the prosecutor made prejudicial comments in closing argument and was unfairly given more time to argue than was defendant; and (6) the trial court improperly instructed the jury.

Louis Almeida testified that he was present when defendant helped plan the invasion on the morning of January 17, 1975, of the Chicago home of Herman Alland, and that he was present with defendant at the scene of the crime and later when defendant admitted his involvement. According to Almeida, the home invasion was planned on January 16, 1975, at a meeting in the house of Joe Neary, during which defendant told him and others present of receiving a tip that $23,000 could be taken from the Alland house and that he (defendant), Martin Fanning, and Harold Stevens would enter the house with Almeida acting as lookout. Almeida further testified that the four men drove to the scene later that night in three separate cars, one of which was a 1966 Mercury; that he heard defendant say they were first going to cut the telephone wires; that defendant, Fanning, and Stevens then left while he (Almeida) stayed behind; that 15 minutes later he heard shots coming from the direction of the Alland house; that after he left the scene, he met defendant at a house in Calumet City where defendant described how he, Fanning, and Stevens, had approached the front door of the house and, when they entered, the shooting started; that defendant said he and Stevens were fleeing to the north when he saw two policemen chase Stevens; and that he stole a bicycle to escape.

Sergeant Richard Bruski testified that an Area Five Robbery unit received a tip concerning the plan for an invasion of the Alland home and that nine policemen had been positioned in the house when defendant, Fanning, and Stevens arrived; that he was stationed in the front room at about 11:30 p.m. that night when he heard some movement outside the house, and a short while later he noticed the phone was dead; that at about 3:25 a.m. he saw an automobile pass by the house and then heard movement at the front door, after which there was a loud crash as the

door was broken open; that two men came through the door, one with a pistol in his hand; that he (Bruski) shouted, "Police, halt!" but the men ignored his order; and that the officers in the room opened fire, killing one man (Fanning) while the other escaped.

Lieutenant William Corcoran testified that after the shooting the police officers inside the house ran out in pursuit of the other two men; that he ran north past two houses and then through a gangway to reach an alley behind the houses; that he heard another officer yell, "Here he is. He has a gun," and then he saw Stevens armed with a handgun; that Corcoran and another officer then fired at and killed Stevens; that a short time later he saw defendant appear in a gangway and was able to view him for several seconds from a distance of 30 feet; that he recognized defendant since he had seen him three or four times in person, knew him by name, and had examined a picture of him about 12 hours before the incident; that he yelled at defendant to stop, but he fled to the north; and that he (Corcoran), in pursuit, yelled "Stop, police!" and fired at defendant, but he escaped. Corcoran further testified that after his encounter with defendant, he immediately informed Lieutenant Morrow and Sergeant Joseph Mucia that he had seen defendant and gave a description of him.

Sergeant Mucia testified that after Corcoran told him of seeing defendant, he issued a radio message giving defendant's name and description and stating that he was wanted for armed robbery and home invasion; that later that morning, he sent a bulletin to all Illinois police departments informing them defendant was wanted for those crimes; that a day or two later, he went to defendant's house in an unsuccessful attempt to arrest him; that on January 20, he submitted a "stop order" to hold him if he were arrested on another charge; and that on January 27, he obtained a warrant for defendant's arrest.

Officer Erich Kleist testified that on the morning of January 17, at the central communication section of the Chicago Police Department, after receiving a message from a dispatcher, he put out an "all-call" broadcast giving defendant's name and description, stating that he was wanted for home invasion and that he was last seen at 1408 North Mayfield.[1] Kleist also testified that the broadcast was made on the authority of an Area Five Robbery unit and was recorded on a card which was time-stamped 4:11 a.m., January 17 (about 45 minutes after the home invasion).

OPINION

■■ Defendant first contends that the failure of the trial court to rule on his motion for a pretrial interview with Louis Almeida impaired his ability to cross-examine him and to prepare rebuttal testimony. The State points out, however, and the record so indicates, that the court never ruled on

---

[1] The Allands lived at 1336 North Mayfield.

the motion and that defendant never attempted to obtain such a ruling.

In *People v. Kostos* (1961), 21 Ill. 2d 496, 173 N.E.2d 466, defendant contended that the trial court erred in failing to rule on a defense motion during trial to suppress evidence of defendant's automobile registration card. The trial court said that it would not rule on the motion until all the witnesses had testified, and the record disclosed no subsequent ruling on the motion or any request by defense counsel for such ruling. The supreme court held that the issue had been waived and that, in any event, defendant suffered no prejudice by the failure to rule because evidence of defendant's ownership was stipulated. Similarly, in *People v. Waller* (1977), 67 Ill. 2d 381, 367 N.E.2d 1283, the trial court reserved its ruling on the admissibility of certain evidence to which defendant had objected but failed to later request a ruling. The supreme court held that the moving party was responsible for obtaining a ruling, stating that:

> "[T]he failure to insist upon a ruling on the objection waived the issue, where the court stated that it reserved its ruling, unsuccessfully requested a 'submission of law' on the subject from counsel, and then, sitting as trier of fact, rendered a verdict without ruling on the admissibility of the testimony." (67 Ill. 2d 381, 386, 367 N.E.2d 1283, 1285.)

Thus, here, the responsibility was on defendant to obtain a ruling on his motion, and his failure to do so waived that issue on appeal. A different conclusion might be warranted where error is plain or defects in trial court rulings affect substantial rights (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a); *Waller*), but imperfectly preserved questions will be considered on appeal only where the evidence is closely balanced (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856), which is not so here.

Even assuming the issue was properly preserved, we find that this contention would be without merit. Defense counsel did in fact interview Almeida before he testified, and the record does not disclose, nor does defendant now say, how he was prejudiced by not obtaining an earlier interview. In this regard, we note that defendant did not move for a continuance after the interview and that Almeida's background and reputation as one who had surrendered his life to crime also were well-known to defendant's counsel at trial, as indicated by his detailed, lengthy cross-examination which included questions concerning crimes for which he had never been charged. Moreover, Almeida's role in the incident was explained in a copy of an FBI report giving Almeida's account of the incident which was furnished to defendant before trial, and he does not complain of the inadequacy of that report.

Defendant cites several cases, assertedly for the proposition that it is a denial of the accused's sixth amendment rights to prevent his access to an informer to determine whether the informer could provide favorable

testimony. Our reading of those cases suggests, however, that they do not apply here, as they stand for the general rule that under certain circumstances the prosecution must disclose the name of an informer or other witness and make him available for an interview with the defense. (See *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623; *People v. Lewis* (1974), 57 Ill. 2d 232, 311 N.E.2d 685; *People v. Glover* (1971), 49 Ill. 2d 78, 273 N.E.2d 367; *People v. Pinchott* (1977), 55 Ill. App. 3d 593, 370 N.E.2d 1289.) As the foregoing discussion indicates, the trial court's failure to rule on the motion in question did not violate the basic protection afforded under this general principle.

Finally, defendant calls our attention to the fact that a transcript of the pretrial proceedings concerning the denial of his request for an interview had been ordered but not yet filed at the time this case was argued on appeal. At this writing, no motion to supplement the record with those proceedings has been presented, but in view of our determination, were the record to indicate such denial, it would not alter our finding. We conclude, therefore, that defendant has not shown how the lack of a more extensive interview with Almeida unfavorably affected his defense, and our reading of the record in light of the case law reveals that defendant was not denied reasonable opportunity to apprise himself of Almeida's testimony.

Defendant next contends that the trial court erred in refusing to grant a continuance following the State's submission to him of a supplemental answer to discovery on the day before trial. In pertinent part, that answer contained three significant items: (1) the name of Officer Thomas Krupowicz, who testified to a fingerprint comparison; (2) the fact that Almeida would testify to an oral statement of defendant; and (3) the name of Officer Erich Kleist, who testified to a police radio broadcast naming defendant. The State maintains, however, that the trial court ruled properly because its supplemental answer contained no information unknown to defendant, as he had previously been given a report containing the results of the fingerprint comparison as well as the name of Krupowicz as the secondary examiner, and defendant was aware of Almeida's incriminating statements nearly one year before trial. The State also argues that the testimony of Kleist was mainly corroborative and, in any event, defendant failed to show prejudice by the denial of the continuance.

The State's duty to comply with defendant's discovery requests is governed in general by Supreme Court Rule 412 (Ill. Rev. Stat. 1975, ch. 110A, par. 412), which requires it to make certain evidentiary disclosures in response to defendant's motion. The case law seems to indicate, without expressly holding, that where defendant is apprised of his own incriminating statements or other evidence through documents previously

furnished by the State, it is proper for the State to use such evidence at trial even though it fails to inform defendant of that evidence through its answer to discovery until the eve of the trial. In *People v. Sanders* (1974), 56 Ill. 2d 241, 306 N.E.2d 865, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1143, 94 S. Ct. 3178, defendant argued that it was error to allow the State to present evidence of the fact that when the police asked his name, he replied, "Leonard Henderson." Some 18 months before trial, defendant moved for the production of any statements he had made and the State replied that it was then unaware of any such statements, but defendant urged that his inculpatory response, "Leonard Henderson" was a statement that should have been initially disclosed by the State. The supreme court held, however, that because defendant had been aware of identical testimony at a suppression hearing one week before trial, he was not surprised or unfairly prejudiced by that testimony at trial.

The same result was reached in *People v. Donald* (1977), 56 Ill. App. 3d 538, 371 N.E.2d 1101, where it was argued that the trial court erred in allowing testimony concerning two statements of defendant—one pertaining to information about his age, weight, and height given at the police station, which corroborated an eyewitness description of him, and the other relating to information from defendant that he did not know the victim, which conflicted with his answer on cross-examination that he denied telling the police he did not know the victim. Defendant objected to the use of those statements because the State failed to disclose them in response to his pretrial discovery motion. Noting substantial compliance with Rule 412 by the State, the court found no error since defendant had been supplied with reports containing the substance of the statements and thus had prior knowledge of them.

Similarly, in *People v. Simms* (1976), 38 Ill. App. 3d 703, 348 N.E.2d 478, *cert. denied* (1977), 429 U.S. 1106, 51 L. Ed. 2d 558, 97 S. Ct. 1138, defendant argued that the State wrongfully withheld evidence which was later admitted against him at trial. He had filed a discovery motion requesting production of his statements, pursuant to Rule 412, and although the State responded that it had no knowledge of any such statements, the police officer victim testified at trial that after he had been shot a second time, defendant said he was going to kill him. During argument on the motion, defense counsel admitted that defendant's previous counsel had received a copy of the statement before trial and that he and defendant were fully aware of the statement prior to its introduction into evidence. The court held that on those facts, defendant was not surprised or prejudiced.

In *Sanders, Donald,* and *Simms,* while the State's answers to discovery indicated an unawareness of any statements, each defendant had knowledge of the statements involved through documents or other information

previously supplied by the State, and in each case the court held that the statements could be used by the State at trial. The record in the present case discloses that the technician who originally performed the fingerprint comparison in question was deceased at the time of trial, which necessitated testimony by the secondary examiner, Krupowicz. Defendant had previously been given the results of the fingerprint test, as well as Krupowicz's name, and did not object at trial, nor does he contend here that insufficiencies in the report impeded the preparation of his defense. Since defendant had the information in time to prepare for trial, the State's supplemental answer was largely superfluous as to the items in question.

■■ By the same reasoning, defendant was not prejudiced by the information concerning Almeida's testimony of defendant's statements to him. Defendant had a copy of Almeida's report to the FBI at least six months before trial, and the only statements that the State intended to use against defendant were described in that document. Thus, defendant had long been aware of the fingerprint evidence and defendant's incriminating statements through other documents previously furnished by the State. The use at trial of the information contained in those documents came as no surprise to defendant and did not prejudice the preparation of his defense.

■■ The testimony of Erich Kleist reveals that he received a dispatch on the morning of January 17 and sent out a broadcast of defendant's name and description, the offense he was alleged to have committed, and his last known whereabouts. Kleist also testified that the message was recorded and stamped at 4:11 a.m. on the morning of January 17. The purpose of Kleist's testimony was to corroborate the testimony of Corcoran and Mucia, and we fail to see how defendant was prejudiced by not being notified until shortly before trial that this testimony might be used. It is within the trial court's discretion to permit the State to call unlisted witnesses, and the trial court's rulings thereon will not be reversed on appeal unless the defendant can demonstrate surprise, unfair advantage, an inability to combat false testimony, or other prejudice. *People v. Steel* (1972), 52 Ill. 2d 442, 288 N.E.2d 355; *People v. Mitchell* (1979), 78 Ill. App. 3d 458, 397 N.E.2d 156; *People v. Anderson* (1977), 46 Ill. App. 3d 607, 360 N.E.2d 1371.

In the present case, defendant was informed one day before trial that Kleist might testify and was afforded an opportunity to interview him before he testified. (*Cf. Steel; People v. Bingham* (1979), 75 Ill. App. 3d 418, 394 N.E.2d 430.) As appears true of the fingerprint evidence and that of defendant's statements to Almeida, defendant gives no satisfactory account of how he could have benefited from a continuance to investigate

Kleist's testimony following the State's amendment of the witness list just prior to trial.

Motions for continuances are addressed to the sound discretion of the trial court (Ill. Rev. Stat. 1977, ch. 38, par. 114—4(e)), and a trial court's denial of a request for additional time will not be subject to reversal absent a showing of prejudice thereby. (*People v. Arbuckle* (1979), 75 Ill. App. 3d 826, 393 N.E.3d 1296.) There being no such showing as to the use of any of the pertinent items in the State's supplemental answer to discovery, it is our view that the trial court's denial of the motion for a continuance was proper.

■■ Defendant next asserts error in the denial of his motion *in limine* to suppress evidence of his prior convictions for burglary and for conspiracy to commt robbery and burglary, for which he was paroled in 1972. The rule governing the admissibility of prior convictions was set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, wherein the supreme court held that evidence of any prior conviction, except on a plea of *nolo contendere*, may be used to attack the credibility of a witness if that crime was punishable by death or imprisonment in excess of one year under the law by which he was convicted, or if such crime involved dishonesty or falsehood irrespective of punishment. For any case, evidence of the prior conviction is inadmissible if the conviction or release of such witness, whichever occurred later, was more than 10 years before the giving of his testimony or if the trial court determines that the probative value of the evidence of crime is substantially outweighed by the danger of unfair prejudice.

■■ Here, we note that the State made no attempt to introduce evidence of defendant's prior convictions, as defendant did not testify. He indicates, however, that his decision not to do so was influenced by the denial of the motion, and he predicates his objection to the use of his prior convictions on the grounds that conspiracy to commit robbery and burglary were indictable misdemeanors at the time of his convictions and that they were "too remote in time." We find no merit to this argument. Six years passed from defendant's release to the date of trial. Moreover, the inchoate offense for which he was convicted carried a penalty not to exceed the maximum penalty for the substantive offense at the time. (See Ill. Rev. Stat. 1969, ch. 38, par. 8—2(c).) Since the maximum penalty for both robbery and burglary exceeded one year's imprisonment (see Ill. Rev. Stat. 1969, ch. 38, par. 18—1(b), 19—1(b)), defendant's conviction for conspiracy carried the same maximum penalty and was properly admissible for impeachment.

Contrary to defendant's contention that the trial court failed to balance the probative value of the evidence against its potential prejudice,

we are convinced that the trial court recognized the latitude allowed by *Montgomery*, and so stated:

"[The evidence of prior convictions] may be admitted in that they do go to his credibility and within the ten years, as Montgomery sets forth, although I understand as far as Montgomery is concerned you can go one way or the other, but to me that was a reasonable time."

Although defendant did not request specific findings of fact, it is normally assumed that the trial court gives appropriate consideration to relevant factors without being required to articulate these in open court (*People v. Washington* (1973), 55 Ill. 2d 521, 304 N.E.2d 276), and a trial court is not required to specify and evaluate such factors when ruling on a motion to exclude use of prior convictions for impeachment (*People v. Fought* (1980), 85 Ill. App. 3d 732, 407 N.E.2d 231; *People v. Bassett* (1980), 84 Ill. App. 3d 133, 404 N.E.2d 1125; *People v. Cornes* (1980), 80 Ill. App. 3d 166, 399 N.E.2d 1346). Finally, we note that a defendant's decision not to testify as a result of the trial court's refusal to bar the impeachment use of his prior convictions will not, standing alone, provide a basis for prejudice. *People v. Leonard* (1980), 83 Ill. 2d 411, 415 N.E.2d 358.) We think the trial court understood the basis for its discretionary power under *Montgomery* and did not err in exercising it.

Defendant next contends that the State's opening statement improperly alluded to evidence which the trial court had not ruled to be admissible and had ordered the State not to comment upon. Defendant moved before trial to exclude evidence of statements made by persons other than defendant at a meeting at the home of Joe Neary, where the home invasion was planned. The record discloses that prior to the opening statement the following exchange took place between the prosecutor and the court:

"MR. ELDEN [for the State]: Secondly, Judge, we do intend to introduce evidence of statements of third parties pursuant to that conspiracy, pursuant to the hearsay rule and also intend to make reference to it in my opening statement.

THE COURT: Well, basically, stay away from it in the opening statement so I can rule upon it at the proper time."

During opening statements, the prosecutor stated:

"On January 16, 1975, a meeting occurred among the five people who were going to participte in this home invasion.

MR. LYNCH [defense counsel]: We will object. I think we have had a discussion on this in limine before we started this morning.

THE COURT: All he said was a meeting occurred. Overruled.

* * *

MR. ELDEN: While Mr. Thibudeaux was there during this two hour period they talked about the proposed score—."

It is apparent that while the State did mention that a meeting occurred and that reference was made to the discussion of the scheme, the State avoided reference to any explicit declarations of the co-conspirators, consistent with the trial court's order. In any event, there was no prejudice, as the above-quoted remarks of the State were fully supported by the evidence adduced at trial when the State established to the satisfaction of the jury that a conspiracy existed to rob the Allands. See *People v. McShan* (1975), 32 Ill. App. 3d 1068, 337 N.E.2d 263.

Defendant further contends that the testimony of Officer Erich Kleist as to a police radio broadcast indicating that defendant was wanted for home invasion was inadmissible hearsay. The State maintains that Kleist's testimony was admissible, as an exception to hearsay, in order to refute defendant's claim that the charge against him was fabricated by the police days after the incident.

The record reveals that defendant was identified by Lieutenant Corcoran, who, knowing defendant from seeing him on other occasions, observed his face from a distance of 30 feet as he was escaping the scene and had also examined a picture of him the day before. However, the cross-examination of Corcoran and Sergeant Bruski brought out that neither had included defendant's name in their police reports; that defendant's name had not been mentioned in a statement given by Corcoran to an assistant state's attorney; and that the warrant for defendant's arrest was not obtained until 10 days after the offense. The defense used those facts to support its assertion of fabrication and, in refutation, the State sought to establish that immediately after the occurrence, a police broadcast was issued stating that defendant was wanted for home invasion. Based on the testimony at trial, the sequence of events appears to be that after observing defendant fleeing the scene, Corcoran gave defendant's name and description to Sergeant Mucia and Lieutenant Morrow and that, after receiving the information, Mucia used his radio to notify Central Communications that defendant was wanted for the offense in question. Kleist testified that he received and broadcast a message that defendant was wanted for home invasion; that he typed up a card containing the message; and that the card was then stamped with the date January 17 and the time 4:11 a.m. (about 45 minutes after commission of the offense).

■■ It is well established that to rebut a charge that a witness was motivated to recently fabricate his testimony, proof is admissible that he gave a similar account of the events before the motive to fabricate arose or before the time of the alleged fabrication (*People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363) or before the effect of the account could be

foreseen (*People v. Rosario* (1978), 65 Ill. App. 3d 170, 382 N.E.2d 31). Here, the testimony of Kleist was not used to prove the truth of the matter asserted; namely, that defendant was implicated in the crime, but rather to show that a radio broadcast had been received and rebroadcast at Central Communications. When an out-of-court statement in the form of a police radio broadcast is offered to prove that a statement was made, and not to prove the truth of its contents, it is not inadmissible hearsay. (*People v. Williams* (1978), 62 Ill. App. 3d 966, 379 N.E.2d 1268; also see *People v. Langdon* (1980), 91 Ill. App. 3d 1050, 415 N.E.2d 578.) The testimony of Kleist was used to establish that a radio communication had been made which contained information similar to that given by Corcoran at the scene which in turn was consistent with his testimony at trial. As such, it was intended to refute defendant's claim of recent fabrication. For that reason, it was properly admitted.

Additionally, as stated in *People v. Lewis* (1977), 52 Ill. App. 3d 477, 485, 367 N.E.2d 710, 715:

"If one party opens up an issue and the other party will be prejudiced unless he can introduce contradictory or explanatory evidence, then the prejudiced party will be permitted to introduce such evidence, even though it might otherwise be improper."

Here, Kleist's testimony was necessary to contradict or explain matters brought out initially by the defense—in particular, the assertion that no police officer knew on February 17 of defendant's involvement in the incident, which it sought to establish with proof that no police report of the incident mentioned defendant's name. It was proper for the State to contradict that theory by proof that defendant's connection with the crime was known by the police on January 17. Also see *People v. Marino* (1980), 80 Ill. App. 3d 657, 400 N.E.2d 491.

Moreover, contrary to defendant's contention that the dispatcher who relayed the message to Kleist had not been sufficiently identified, we think the foundation for that testimony was adequate. There was significant circumstantial evidence that the information received by Kleist had been radioed in by Mucia. Minutes after the incident, Kleist received the message from the Area Five Robbery unit, and Mucia testified that he radioed in such a message at that time. It is reasonable to conclude, therefore, that the message received by Kleist had been sent by Mucia.

We also note in this regard that defendant's right to confrontation was not impaired since both Corcoran and Mucia, who most probably provided the information used by Kleist, were present at trial and that the several cases cited by defendant in support of the proposition that police reports are inadmissible hearsay are inapposite, since the police report to which Kleist testified was not offered to prove the truth of the matter asserted. *Cf. People v. Parrott* (1976), 40 Ill. App. 3d 328, 352 N.E.2d 299.

In summary, Kleist's testimony primarily corroborated that of Corcoran and Mucia and refuted defendant's claim of recent fabrication. Taken together, the testimony of Corcoran, Mucia, and Kleist demonstrate that Corcoran identified defendant at the scene long before the alleged fabrication. We conclude, therefore, that Kleist's testimony was properly admitted.

Defendant next asserts error with respect to a number of evidentiary rulings. He argues that the trial court prejudicially restricted the cross-examination of Almeida concerning an attempted suicide, his residence, and allegedly false statements he made to the police and the grand jury.

■■ The permissible scope of cross-examination was defined in *People v. Gallo* (1973), 54 Ill. 2d 343, 356, 297 N.E.2d 569, 576, quoting *People v. Halteman* (1956), 10 Ill. 2d 74, 86, 139 N.E.2d 286, 294, wherein the court stated:

> " 'As a general rule the latitude to be allowed in cross-examination of witnesses rests largely in the discretion of the trial court. Such cross-examination should be kept within fair and reasonable limits, and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere.' " (See *Langdon.*)

Generally, it is also within the trial court's discretion to permit impeachment of a witness by attacking his character through proof of the conviction of an infamous crime, but proof of arrests, indictments, charges or actual commission of crime is inadmissible. *People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835; *People v. Kavanaugh* (1980), 85 Ill. App. 3d 783, 408 N.E.2d 23.

Initially, we note that the trial court here permitted great latitude in the cross-examination of Almeida. Not only did defense counsel elicit testimony of Almeida's convictions, but he also brought out that Almeida had committed dozens of crimes for which he had not been charged or convicted; that he had been planning to commit a murder at the time of his arrest; and that he had committed crimes for which there was no evidence of prosecutorial leniency.

■■ Concerning the specific complaint that there was an abuse of discretion in the refusal to permit defense counsel to question Almeida concerning an alleged suicide attempt, we believe that the trial court properly concluded such an attempt on some unspecified date, with no details given, had no probative value—particularly in view of the fact that the State made no effort to present Almeida as a witness of good reputation and background. We also note that defendant failed to preserve the issue of the suicide attempt, as no offer of proof was made as to what evidence would be presented to establish that such attempt actually had occurred. An accused cannot claim on appeal that certain

evidence should have been admitted if there was no offer of proof in the record setting forth such evidence. (*People v. Slaughter* (1977), 55 Ill. App. 3d 973, 371 N.E.2d 666; *People v. Warren* (1975), 32 Ill. App. 3d 218, 336 N.E.2d 557) unless the purpose and materiality of the evidence sought to be introduced was apparent to the trial court (*People v. Bibbs* (1969), 115 Ill. App. 2d 200, 253 N.E.2d 179, *cert. denied* (1970), 398 U.S. 967, 26 L. Ed. 2d 552, 90 S. Ct. 2184), which was not so in the case before us.

Also, with respect to the trial court's refusal to permit questioning of Almeida about his address, the record shows that he had testified in many criminal cases and had been placed in the federal witness program. It was reasonable for the trial court to conclude that Almeida's address had no relevancy and to reveal it might endanger him. Also see *People v. McCray* (1965), 33 Ill. 2d 66, 210 N.E.2d 161, *aff'd sub nom. McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056; *People v. Reed* (1961), 21 Ill. 2d 416, 173 N.E.2d 422, *cert. denied* (1962), 368 U.S. 990, 7 L. Ed. 2d 527, 82 S. Ct. 605.

Finally, although the trial court over objection allowed Almeida to be asked whether he had committed perjury in a prior, unrelated criminal case and he answered in the affirmative, it appears that he had never been charged with or convicted of perjury. Thus, the trial court ruled correctly in sustaining the State's objections to questioning concerning what he had told the police and the grand jury about the prior case. Accordingly, we see no abuse of discretion in the manner in which the trial court limited the scope of this cross-examination.

Defendant additionally posits that testimony relating to the fingerprint identification of Harold Stevens, killed during the incident, was erroneously admitted because a proper foundation was not laid and the chain of custody was not established. The State maintains that Stevens's fingerprint was used to demonstrate that the police had carried out a proper investigation and had found nothing to exculpate defendant.

■■ Before any object may be introduced into evidence, a proper foundation must be laid either through its identification by a witness or by establishing a chain of custody. (*People v. Greer* (1963), 28 Ill. 2d 107, 190 N.E.2d 742.) We believe that a proper foundation was laid here for admission of the fingerprint evidence. Technician Thomas Ginnelly, Forensic Photographer Arthur Kleist, and Officer Krupowicz testified concerning recovery of a fingerprint of an accomplice (Stevens) from a 1966 Mercury found near the scene. Ginnelly testified that outside the Alland House he recovered a screwdriver and a pry bar; that he then went to the gangway, where he examined the body of Stevens and found a revolver beside it; that he dusted various things for fingerprints and found one set on the rear view mirror of the Mercury; and that he took fingerprints from the body of Stevens at the morgue. Both sets of

fingerprints were labeled for identification, indicating the date, where they were recovered, and by whom. Arthur Kleist testified that he prepared a lift of the fingerprint on the rear-view mirror which was labeled for identification and that he photographed the lift. Krupowicz testified that he compared the lift taken from the rear view mirror with the fingerprints of Stevens and that the fingerprint from the lift was that of Stevens. Ginnelly, Kleist, and Krupowicz further identified the exhibits they had used or prepared concerning the fingerprint evidence, and they were admitted into evidence together with their identifying labels.

■■ It was thus unnecessary to establish the chain of custody for the fingerprint evidence, since the officers who prepared the prints (Ginnelly and Arthur Kleist) identified them. The testimony of all three officers likewise described their tasks, the materials they had used in the process, and the labels attached to the items. That testimony sufficiently indicated their uniqueness and essentially unchanged condition, and thereby provided an adequate basis for identification. Therefore, the evidence was properly admitted. See *People v. Rhodes* (1980), 81 Ill. App. 3d 339, 401 N.E.2d 237, *People v. Lewis* (1977), 52 Ill. App. 3d 477, 367 N.E.2d 710.

Defendant raises numerous contentions of impropriety on the part of the State and the trial court during closing argument. This opinion need not be unduly extended by setting forth the details of those contentions. We have carefully considered the facts and the law concerning each one and find that, in view of the strong evidence otherwise presented, no prejudicial error was committed. Furthermore, the contention that defendant was unfairly limited in the amount of time available to him for final argument is equally unpersuasive. No order appears in the record placing a time limit on final argument, and it is clear that defendant made no request for more time nor did he ask that the time of the State be limited. Defendant also does not suggest any relevant argument he was prevented from making and does not otherwise indicate how he may have been prejudiced by the difference in argument time.

Defendant finally contends that the trial court erred in refusing jury instructions tendered by him. He first maintains that the trial court erred in refusing to give Illinois Pattern Jury Instructions, Criminal, No. 14.06 (1968) (IPI Criminal), defining the issues of burglary, which he tendered, and in giving instead the State's version which included the clause "or one for whom he is responsible" in each of the issue paragraphs of IPI Criminal No. 14.06. The instruction thus read in relevant part:

> "To sustain the charge of burglary, the State must prove the following propositions:
> *First*: That the defendant, or one for whom he is responsible, knowingly entered a building, or any part thereof; and

*Second*: That the defendant, or one for whom he is responsible, did so without authority; and

*Third*: That the defendant, or one for whom he is responsible, did so with intent to commit the crime of armed robbery."

Defendant argues that the instruction was a modified IPI and should not have been given in that form because there was no determination that IPI Criminal No. 14.06 did not accurately state the law, as required by Supreme Court Rule 451(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 451(a)). It is our view, however, that even if such determination was not made, it was not error, since accountability was clearly at issue.

The evidence showed that defendant set out to commit a home invasion in the company of Fanning and Stevens, and that while the police testified that Fanning entered the house, they were unable to identify the other man who was with him. Although Almeida testified that defendant said that he was in the house, if the jury concluded that entry by defendant had not been established, he could only be found guilty of burglary on an accountability theory. Moreover, no one questioned that if defendant was present in this situation, he was accountable.

In numerous cases, it has been held that a defendant may be found guilty of burglary on a theory of accountability. (*People v. King* (1980), 88 Ill. App. 3d 548, 410 N.E.2d 1070; *People v. Baynes* (1980), 87 Ill. App. 3d 1000, 410 N.E.2d 894; *People v. Jones* (1980), 86 Ill. App. 3d 278, 407 N.E.2d 1121.) Thus, in order to establish guilt through accountability, it is necessary to prove that the defendant aided or agreed to aid another in the planning or commission of the offense; that such participation took place either before or during the commission of the offense; and that defendant intended to promote or facilitate the commission of the offense. (See Ill. Rev. Stat. 1975, ch. 38, par. 5—1, 5—2(c).) The addition of the accountability language was therefore necessary, but the question remains whether the form of the issues instruction given was confusing to the jury.

■■ ■ In support of its contention that such additional language on accountability has been approved in Illinois, the State cites *People v. Heflin* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367, *cert. denied* (1979), 439 U.S. 1074, 59 L. Ed. 2d 41, 99 S. Ct. 848, and *People v. Grignon* (1976), 37 Ill. App. 3d 418, 346 N.E.2d 82, *cert. denied* (1977), 430 U.S. 909, 51 L. Ed. 2d 585, 97 S. Ct. 1181. In both of those cases the addition was phrased in terms of "legally responsible" rather than only in terms of "responsible." We do not think, however, that the difference in phrasing is fatal to the State's position. There is no indication in the context of the present case that use of the word "responsible" alone was susceptible to various interpretations by the jury and would thereby hopelessly confuse them, nor is there any indication how the use of that term by itself might tend to

obscure rather than define and explain the concept of accountability. (*Cf. Heflin.*) Moreover, the instruction tendered by defendant omitted all reference to accountability and would have required the State to prove actual entry into the victim's house in order to sustain the charge of burglary. That appears to us to have been an inaccurate statement of the law as applicable in this case and likely to have confused the jury, particularly as they would have read it in conjunction with the instruction defining accountability. (See IPI Criminal No. 5.03.) As was stated in *People v. Grignon* (1976), 37 Ill. App. 3d at 430, 346 N.E.2d at 92, quoting *People v. Juve* (1969), 106 Ill. App. 2d 421, 427, 245 N.E.2d 293, 297:

> " 'Instructions are to be considered as a whole, and not singly. Where the series of instructions, considered together, correctly state the applicable law, a party may not single out one, which standing alone, might itself be inaccurate.' "

We think it clear that considered as a whole the instructions here accurately stated the applicable law with respect to both burglary and accountability, and while it is arguable that the use of the word "responsible" instead of "legally responsible" may have been a problematic formulation, we can safely conclude that the jury considered it as instructed. Having determined that the use of the word "responsible" was no obstacle to the jury's deliberation, we find no error in the form of the instruction given.

We also believe the trial court properly refused defendant's tendered instructions Nos. 15, 16, and 17 on the law of arrest. As stated in 14A Ill. L. & Prac. *Criminal Law* §701 (1968):

> "The instructions given to the jury should be based upon, and applicable to, the issues raised in the case, * * * and an instruction which, although it states a correct legal proposition, is not based upon or applicable to the issues, may be properly refused."

Defendant argues here that the failure of the police to obtain a warrant for his arrest until 10 days after the incident meant that the police made no decision to arrest defendant until some time thereafter. While this appears to be a correct statement, the issues involved herein concern only defendant's guilt as to attempt armed robbery and burglary. Because the legality of defendant's arrest was not an issue, the instructions were properly refused.

Moreover, defendant's proposed Instruction No. 17, concerning the limitations on the authority of the police to make an arrest on the basis of a radio message, was properly refused for the additional reasons that it failed to meet the requirement of the Supreme Court Rules that non-IPI instructions be "simple, brief, impartial, and free from argument" (Ill. Rev. Stat. 1977, ch. 110A, par. 451(a)) and because it is contrary to the law, for clearly a police officer may effect an arrest on the basis of

information received through police communications channels—including radio messages—without the necessity of an outstanding arrest warrant or preexisting probable cause in the mind of the arresting officer (*People v. Kahl* (1978), 63 Ill. App. 3d 703, 380 N.E.2d 487; *People v. Evans* (1975), 32 Ill. App. 3d 865, 336 N.E.2d 792; *People v. Wrona* (1972), 7 Ill. App. 3d 1, 286 N.E.2d 370).

For the reasons stated, the convictions and the sentence are affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.