THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EDDIE JAMES BISHOP, Defendant-Appellant.

Fourth District   No. 14287

Opinion filed June 16, 1978.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (James E. Hinterlong and Robert M. Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Following a jury trial, the defendant, Eddie James Bishop, was convicted of murder and sentenced to a term of imprisonment of 25 to 50 years. The defendant appeals, contending that physical evidence seized during a search incident to his arrest should have been suppressed and that his sentence was excessive.

It is necessary to set forth the facts of defendant's arrest in some detail since those facts are important in determining whether the search incident to his arrest was proper. The Champaign Police Department received information on February 12, 1976, of defendant's location. An arrest warrant for the defendant had been on file since January 9, 1976, and an indictment had been returned against the defendant on January 27, 1976, charging him with murder. Acting upon that information, nine police officers of the Champaign Police Department assembled outside of defendant's grandfather's house on North Oak Street in Champaign at approximately 5:25 a.m. on February 13, 1976. A search warrant had not been issued for the premises on North Oak Street nor does it appear from the record that there was any attempt by the police to obtain one.

Captain Wilkinson of the Champaign Police Department knocked hard on the back door of the house and shouted for the defendant to come outside. The force of the knock caused the door to open and the officers observed the defendant standing in the archway of the door that divided the kitchen and the living room. The defendant walked toward the officers into the kitchen and was informed that they were police officers and that they had a warrant for his arrest for murder. He was instructed to keep his hands up and he did so. The defendant was searched by the officers, given his shoes, and told to sit down at the kitchen table.

As the defendant was putting on his shoes, Captain Wilkinson stated that he had found something. The item discovered was a .38-caliber revolver which had been found underneath the cushion of a chair in the living room. The chair was a distance of 10 to 12 feet from where the defendant was sitting and was to the left of the doorway between the kitchen and the living room. The chair in which the gun was found was not visible from where the defendant was sitting in the kitchen nor could Captain Wilkinson see the defendant when he found the gun.

At the moment the gun was discovered, two police officers were standing next to the defendant. The police officers had been informed that the defendant was believed to be armed, however the defendant

made no movement after he was informed he was under arrest to put the police officers in apprehension of attack. Furthermore, at least two of the nine police officers had their weapons drawn.

The trial court, after hearing the testimony of the police officers and the defendant at the hearing on the motion to suppress, found that the revolver had been taken as an incident of a legal arrest and that it was taken from an area within the defendant's immediate control, both for evidence and for protection of the police officers making the arrest.

A jury trial was held and the gun seized when the defendant was arrested was admitted into evidence. Testimony from a criminalist with the Illinois Bureau of Investigation and a Champaign police officer showed that the bullet removed from the decedent's left thigh had been fired from the gun seized during the defendant's arrest.

Other witnesses at the trial included Michael Exum and Bruce Owens, the two other individuals involved in the murder. Both had pleaded guilty prior to the defendant's trial. Exum received the statutory minimum of 14 years and a maximum of 35 years. Owens was sentenced to a minimum of 14 years and a maximum of 20 years. At the conclusion of the defendant's trial, he was found guilty of murder and was subsequently sentenced to a period of imprisonment of 25 to 50 years.

The defendant argues that the trial court erred in denying the motion to suppress the gun seized during the search incident to his arrest since he maintains that the gun was not in the area "within his immediate control."

■■ The basic guidelines for a search incident to arrest have been established by the case of *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, and those guidelines are as follows:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U.S. 752, 762-63, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034.

The supreme court did not set forth an exact definition or description of what area constitutes the area "within his immediate control." The court did, however, provide the following limitation on the scope of a search incident to an arrest:

> "There is no comparable justification, however, for *routinely searching any room other than that in which an arrest occurs*—or, for that matter, for searching through all the desk drawers or other closed or *concealed areas in that room itself*. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less." (Emphasis added.) 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034.

In the present case, it appears, the room in which the defendant was actually arrested was the kitchen. As the police entered the house through the rear door, the defendant moved toward the police into the kitchen, and, at that time, the police informed the defendant he was to keep his hands up and that he was under arrest. Thus, if the defendant was actually arrested in the kitchen, the search in the living room under the rationale of *Chimel* was beyond the scope of a search incident to his arrest. It also appears that even if the arrest actually occurred as the defendant stood in the doorway between the kitchen and the living room, this would not have allowed the police, under *Chimel*, to search under the cushion of the chair since this was a concealed area in the living room.

Since the facts of where the arrest actually took place and the defendant's accessibility to the gun are not perfectly clear, additional factors need to be considered. An Illinois Supreme Court case has discussed the permissible extent of a warrantless search incident to an arrest, and has set forth factors to be considered in determining the reasonableness of the search:

> "Whether the search is reasonable must depend on the particular facts of the case. Among the factors to be considered in this case are the knowledge that the suspect was armed, the presence of another person who might attempt to assist the suspect, the accessibility of the searched area, and the physical control of the situation exercised by the police." *People v. Williams* (1974), 57 Ill. 2d 239, 246, 311 N.E.2d 681, 685, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506.

The police in the instant case were informed that the defendant was armed. However, the police did not have actual knowledge that the defendant was armed as did the police in *Williams*. There was no information received that there were any other persons in the house with the defendant. A quick walk-through by the police officers after the

defendant was in the kitchen indicated that the defendant was the only person in the house. The gun was discovered by Captain Wilkinson under the cushion of a chair in the living room and that chair was, according to the testimony of the police officers, 10 to 12 feet away from where the defendant was sitting in the kitchen. In addition, the police also testified that the chair in the living room could not be seen from where the defendant was sitting in the kitchen. The police testimony indicates that the defendant would have had to go over the kitchen table and through the doorway between the living room and the kitchen and then move laterally in order to obtain the gun from under the cushion of the chair.

■■ Considering these facts, in view of the guidelines of *Chimel,* and the factors to be considered in *Williams,* it is apparent that the search which discovered the gun was beyond the scope of a search incident to an arrest. At least two of the officers had their weapons drawn and the defendant had been frisked for weapons or evidence prior to being placed in the chair. It was therefore apparent that the police officers had physical control of the situation. The defendant would have been unable to move from the kitchen chair, over the kitchen table, and into the living room without an immediate reaction by the police. The chair in the living room in which the gun was discovered was, therefore, beyond the reach of the defendant and certainly not in the area "within his immediate control." Thus, the warrantless search was beyond the scope of a search incident to an arrest and the trial judge was in error to deny defendant's motion to suppress the gun.

Since the gun was improperly admitted at trial, it is necessary to determine if that error was harmless. Before a constitutional error can be held harmless a court must find that the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) To decide this question it is necessary to review the facts of the case and the evidence adduced at trial.

The murder for which defendant was convicted resulted from an apparent attempt by Exum, Owens, and the defendant to obtain drugs from the decedent. Exum testified that the defendant informed him on the evening of the murder that they could steal some drugs, and, in preparation, they armed themselves with guns. The three individuals were driven to the decedent's residence by Victor Jones. The decedent refused the three admittance; however, they forced their way into his living room, and, after a struggle, the decedent was shot once in the left thigh and once in the chest. Exum testified that the defendant shot the decedent in the leg and that Owens, who had obtained Exum's gun, fired the shot into the chest.

Owens testified that he was in the decedent's house and was involved in the struggle. He stated that he had not shot the decedent but had run out

of the house before the shots were fired. He further testified that he had observed a gun in the defendant's hand while they were in the decedent's living room.

Victor Jones testified that he had driven the three individuals to the decedent's house and that he had remained in the car. He further testified that they returned to the car after he heard a shot and that Owens and the defendant were carrying guns.

The defendant testified in his own behalf and stated that he was not aware that Owens and Exum planned to steal the drugs. He further testified that he remained in the car with Jones while Owens and Exum went to obtain the drugs. In addition, he testified that Exum and Owens ran to the car after two shots were fired and that he observed a gun in Exum's hand.

■■ The testimony is conflicting. However, the fact remains that three witnesses positively placed the defendant at the scene of the crime as an active participant. There is direct and positive evidence that the defendant participated in the attempt to steal the drugs and that he was armed with a gun. Thus, this evidence is sufficient to convict, even though such testimony is contradicted by the accused. *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.

■■ The jury was instructed on the issues of accountability and felony-murder and those instructions incorporated the essentials of sections 5—2 and 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 5—2, 9—1). The evidence at trial excluding the gun was, therefore, sufficient to convict the defendant on an accountability theory since all participants in a robbery, where a murder is committed, are deemed equally guilty of murder. (*People v. Johnson* (1973), 55 Ill. 2d 62, 302 N.E.2d 20.) Thus, the error in admitting the gun unlawfully seized during the search incident to the defendant's arrest was harmless beyond a reasonable doubt in view of the overwhelming evidence placing the defendant, as an active participant, at the scene of the crime. *Harrington v. California* (1969), 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726.

The defendant's final contention is that his sentence was excessive when compared with the sentences received by Exum and Owens. He argues that his sentence of 25 to 50 years was disparate when compared with Owens' sentence of 14 to 20 years and Exum's sentence of 14 to 35 years.

This contention is well founded since there is nothing in the record to indicate that the defendant was the leader of the group, that he played a more active role in the murder, or that he had a more serious prior record than Michael Exum. *People v. Morris* (1969), 43 Ill. 2d 124, 251 N.E.2d 202; *People v. Slicker* (1969), 42 Ill. 2d 307, 247 N.E.2d 407.

The defendant's presentence report revealed that at the time of that

report he was 19 years of age, married, with one child. It notes that he was an above average student and that he had prior honorable Army service. The report further notes that the defendant had one juvenile petition for assault which was dismissed and four other minor juvenile charges. His previous adult convictions included seven traffic violations and one Class A misdemeanor for which he served 30 days in the county jail.

Michael Exum's presentence report indicates that at the time of the report he was 17 years of age and single. It notes that he was a poor student and that he had been expelled from school. His previous juvenile police contacts included five station adjustments, two juvenile petitions for assault at school, one juvenile petition for petty theft, and two minor charges. He was classified as an official delinquent on December 19, 1974, and was continued on that status until January 12, 1976.

Bruce Owens waived the presentence investigation and report and thus there is nothing in the record to indicate whether he had any prior juvenile contacts or previous adult convictions.

■■ The defendant's presentence report, when compared with Exum's, provides no justification for imposing a more severe sentence on the defendant. Furthermore, the gun that was found when Bishop was arrested was the gun that shot the victim in the leg and was not the weapon that inflicted the fatal wound. Although the trial judge stated he wasn't penalizing the defendant for having a jury trial, he proceeded to sentence the defendant on the basis that the evidence at trial indicated that this was a senseless killing. Thus, in view of the presentence reports, the gun discovered when the defendant was arrested, and the trial judge's comments, there was not a sufficient basis to warrant a more severe sentence for the defendant than for Exum. The defendant's sentence, therefore, should be, and is, modified to a sentence of not less than 14 nor more than 35 years.

The judgment of conviction is affirmed; sentence modified. Cause remanded to the circuit court for the issuance of an amended mittimus.

Affirmed and remanded.

MILLS, P. J., and TRAPP, J., concur.