(No. 53494.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. JOHN MYLES, Appellee.

*Opinion filed September 30, 1981.*

Tyrone Fahner and William J. Scott, Attorneys General, of Springfield, and Richard M. Daley and Bernard Carey, State's Attorneys, of Chicago (Melbourne A. Noel, Jr., Mark L. Rotert and Donald B. Mackay, Assistant Attorneys General, and Marcia B. Orr, Joan S. Cherry and Michael K. Demetrio, Assistant State's Attorneys, all of Chicago, of counsel), for the People.

Ralph Ruebner, Deputy Defender, and Susan Bandes, Assistant Appellate Defender, of Chicago, for appellee.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

In a jury trial in the circuit court of Cook County, defendant, John Myles, was found guilty of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2), and sentenced to the penitentiary for a term of not less than 35 nor more than 60 years. The appellate court reversed and remanded (83 Ill. App. 3d 843), and we allowed the People's petition for leave

to appeal. The facts are adequately stated in the appellate court opinion and will be repeated here only to the extent necessary to discuss the issues.

On June 14, 1974, defendant was charged by indictment with armed robbery committed on January 30, 1974. He was arraigned on July 5, 1974. At the arraignment the law firm of Smith, Reilly, Bell and Weinberg, by Mr. Tyce Smith, filed an appearance as defendant's attorneys. Thereafter, several preliminary motions were presented in defendant's behalf and the case was continued a number of times. Throughout the proceedings James Reilly appeared for defendant. On March 8, 1976, Mr. Reilly advised the court that defendant no longer desired his services and requested permission to withdraw. Defendant confirmed this, saying he thought Reilly had not protected his rights. The trial court denied Reilly's request to withdraw and stated that he would not permit Mr. Reilly to withdraw until another attorney appeared for defendant. The court continued the cause pending defendant's efforts to secure an attorney. On March 17, 1976, defendant stated that he had spoken with attorney E. Duke McNeil and thought that he would take his case. The court instructed defendant that Mr. McNeil should appear the following morning. On March 18, 1976, the State's Attorney said he had spoken to McNeil, who stated he did not intend to file an appearance. Defendant said that he was attempting to raise money to pay McNeil's fee and the court continued the matter again. On March 29, 1976, Reilly again moved for leave to withdraw, noting that defendant had refused to cooperate in the preparation of a defense. Defendant stated that he did not want to be represented by Reilly or by the public defender and that he was unable to represent himself. The case was set for trial the next day.

On March 30, 1976, defendant refused to leave the lockup and enter the courtroom. Brought out of the lockup, he stated that he was not ready for trial, that he did not

desire to be represented by Reilly or the public defender, and that he needed time to obtain another lawyer and acquire the money to pay him. Thereafter, prospective jurors were called and questioned. When Reilly was introduced as defendant's attorney, defendant said that he did not have an attorney and Reilly was not representing him. After the jurors were sworn the case was recessed until March 31, 1976. On that day the case was continued pending disposition of a petition filed by Reilly in the United States District Court for the Northern District of Illinois to determine whether he could be compelled to act as defendant's attorney. On April 2, 1976, Reilly advised the court that his petition was dismissed by the district court for want of jurisdiction. Defendant again stated that he did not want Reilly as his attorney and Reilly again moved to withdraw. The court denied the motion to withdraw until another attorney appeared to represent defendant and directed Reilly "to do everything that he can possibly do" on defendant's behalf. Thereupon, Reilly filed a motion to quash defendant's arrest, to suppress identification testimony, and to suppress fingerprint evidence. On April 5, 1976, a hearing was conducted on the motions presented by Reilly and the court determined that the police had probable cause to arrest defendant and denied all motions.

On April 8 and 9, 1976, a jury was selected and the defendant again requested time to hire another lawyer. On April 12, 1976, Reilly reported to the court that he had received an anonymous telephone call at his home during which the caller requested that Reilly resign from defendant's case and made "implied or direct threats" to Reilly and his family. He again moved for leave to withdraw from the case.

On April 14, 1976, the circuit court allowed Reilly's motion to withdraw and, over the objection of both the public defender and defendant, appointed the public defender to represent defendant. The public defender moved

for a substitution of judge, for a change of venue, and for discharge of the jury. The motions were denied. The public defender also moved to continue the case for 30 days, and the court continued the case until April 26, 1976, in order that the public defender might prepare for trial. Prior to adjournment, an assistant public defender had defendant sworn and asked "If this case goes to trial do you wish us to do anything on your behalf during the course of that trial?" The defendant answered "No."

On April 26, 1976, when questioned by the court, defendant stated that he was not ready for trial because he did not have a lawyer, that he could not proceed *pro se*, and that he did not desire the services of the public defender. The public defender again requested permission to withdraw and stated that defendant had not cooperated in the preparation of a defense. Permission was denied and the case proceeded to trial. During the assistant State's Attorney's opening statement, defendant interrupted, stating that he was being forced to trial, that he had no attorney, and that the judge would not allow him time to obtain one. The jury was removed and the court asked for defendant's assurances that he would remain orderly. Defendant was warned that he would be removed should another "outburst" occur. As the court ordered the jury to be brought in, defendant said, apparently to the assistant public defenders, "I don't want you by me. I don't want you saying nothing, doing nothing, don't sit by me." Counsel indicated that they would comply with defendant's wishes and would sit in the first row of seats in the courtroom, away from defendant.

After the People's opening statement both assistant public defenders approached the bench and informed the court that they would make no opening statement because defendant refused to discuss the case with them and did not desire them to represent him. They also called to the court's attention that George Howard, an attorney whom defendant had mentioned previously, was present. Following a

recess, defendant stated that Howard would not file an appearance because the court refused to allow him time to prepare. The court noted that it had spoken to Howard in chambers and that he would not be filing an appearance.

Defendant was asked whether he would like to make an opening statement confined to the evidence. Defendant said he would like to address the jury in order to explain that he was being forced to trial against his will. Defendant was told that his opening statement was to be limited to the facts of the case. The court then explained to defendant that he could have one or both appointed attorneys represent him or he could represent himself. After defendant stated that he would continue to make statements to the jury, he was removed until he agreed to conduct himself in an orderly manner. Testimony from the first witness was taken in defendant's absence. During that testimony, defendant's presence was sought for the purposes of identification. He refused to enter the courtroom and removed his clothing. The court ordered the sheriffs to dress defendant and bring him to the doorway of the courtroom. Defendant, wearing only his underwear, came to the doorway accompanied by eight deputy sheriffs. At the conclusion of the witness' testimony, defendant returned to the courtroom and, after the testimony was summarized for him by the assistant public defenders, conducted a brief cross-examination of the witness. Defendant was present for the remainder of the trial and cross-examined two more of the People's witnesses. He objected to the admission of certain items of evidence and to the instructions tendered by the People. Defendant attempted to elicit the testimony of two witnesses on his behalf, and conducted his own closing argument. Periodically throughout the trial the two assistant public defenders appointed to represent defendant advised the court that they were instructed by defendant not to participate in the trial, and statements by the defendant confirmed this. Nonetheless, on several occasions the assis-

tant public defenders informed the court of objections they would make if permitted to do so by defendant. They also were available to advise defendant throughout the trial and did so several times.

The appellate court held that because defendant was not admonished as required by Supreme Court Rule 401(a) (73 Ill. 2d R. 401(a)) there was no knowing waiver of the right to counsel. Supreme Court Rule 401(a) provides:

"Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court."

It concluded that since the requisite Rule 401(a) warnings were not given by the circuit court, there was no waiver of the right to counsel. It held, too, that because he had successfully prevented appointed counsel from actively participating in the trial, defendant did not receive effective assistance of counsel.

The People contend that an examination of the record as a whole reveals substantial compliance with Rule 401(a) and therefore no ground existed for invalidating defendant's waiver of counsel. Alternatively, they contend that defendant was provided with appointed counsel whose advice he rejected; that under the facts of this case there was no waiver of counsel which would invoke Rule 401(a).

Defendant contends that he did not waive his right to counsel and, in view of his insistence that he could not

represent himself, the circuit court should not have permitted appointed counsel "to sit quietly through the trial." Defendant argues that, as a consequence of the public defender's inaction, he was denied the effective assistance of counsel.

This record presents a situation which required the circuit court to consider a number of competing interests. Defendant was entitled to the effective assistance of counsel in presenting his defense (*People v. Johnson* (1979), 75 Ill. 2d 180), and ordinarily would be entitled to counsel of his choice. (*People v. Friedrich* (1960), 20 Ill. 2d 240.) An indigent defendant is entitled to have counsel appointed for him (*Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792) or, should he choose to do so, may conduct his defense without benefit of counsel (*Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525). In affording a defendant these rights, however, the circuit court is charged with the responsibility to administer justice without needless delay. In recognition of this principle, the right to counsel of a defendant's own choosing may not be employed as a weapon to indefinitely thwart the administration of justice or to otherwise embarrass the effective prosecution of crime. *People v. Friedman* (1980), 79 Ill. 2d 341, 349; *People v. Solomon* (1962), 24 Ill. 2d 586, 590.

We do not agree with the appellate court that the failure to admonish defendant in accordance with Rule 401(a) was error. We find this case analogous in certain respects to *People v. Johnson* (1979), 75 Ill. 2d 180. There in the midst of trial the circuit judge called the defendant into chambers and informed him that, in the judge's opinion, defendant was not receiving the assistance of competent counsel. He offered the defendant the option of proceeding with trial or moving for a mistrial and starting anew with different counsel, appointed or retained as the defendant elected. The defendant chose to proceed with his original attorney,

but on appeal contended that because the Rule 401(a) admonitions were not given this action did not constitute a waiver of competent counsel. The court disagreed, saying:

> "This rule, however, was not intended to apply to the novel situation which here confronted the trial judge. The rule applies when a criminal defendant waives counsel entirely and elects, instead, to represent himself. Here, defendant did not seek to waive counsel and represent himself, but, rather, elected to proceed with counsel of his own choosing despite the judge's caution that that counsel was incompetent. Rule 401(a) is inapplicable under these circumstances." 75 Ill. 2d 180, 186.

Here defendant clearly and repeatedly declined to undertake his own representation. Thus, Rule 401(a) was inapplicable. Defendant's refusal to heed the advice or employ the services of appointed counsel did not necessitate that the circuit court admonish defendant in accordance with Rule 401(a).

Defendant contends that counsel's failure to participate in the trial deprived him of the effective assistance of counsel. The record shows that this failure to participate resulted from defendant's refusal to cooperate with appointed counsel and that he forbade counsel's participation. Given defendant's conduct, we find the case of *People v. Solomon* (1962), 24 Ill. 2d 586, apposite. In *Solomon* a public defender was appointed to represent the defendant when he failed to obtain private counsel. A trial date was set: however, during the time preceding trial, the defendant refused to cooperate in any way with appointed counsel. The public defender moved to continue the trial in order that the defendant obtain counsel of his choice, but the trial court denied that motion. At trial no evidence was introduced on defendant's behalf. Before this court, the defendant argued both that a continuance should have been granted and that his counsel was incompetent. The court said:

"The granting of a continuance to permit preparation for a case, or for the substitution of counsel, necessarily depends upon the particular facts and circumstances surrounding the request, and is a matter resting within the sound judicial discretion of the trial court. [Citations.] Before a judgment of conviction will be reversed because of the denial of such a motion, it must appear that the refusal of additional time in some manner embarrassed the accused in preparing his defense and prejudiced his rights. [Citations.] In the instant case the public defender was appointed as defendant's counsel approximately two weeks before trial in ample time to prepare a defense, if one in fact existed. Since defendant utterly refused to co-operate with his counsel, he cannot now be heard to complain that the denial of the motion for continuance embarrassed his defense or prejudiced his rights. We would add, too, that the same conduct of defendant serves greatly to estop the contentions that counsel was incompetent because he made no preparation for trial and because he did not call defendant as a witness. The record discloses that the appointed counsel did his utmost to fulfill his duty to defend, but was effectively frustrated in his efforts by defendant's lack of cooperation. It would be a strange anomaly indeed if an accused could refuse to aid or co-operate with counsel then, on review, advance counsel's lack of preparation as a ground of incompetency." 24 Ill. 2d 586, 589-90.

As did the defendant in *Solomon,* defendant utterly refused to cooperate with appointed counsel. As a consequence, the inquiry into the quality of representation afforded defendant is cut short. Defendant is estopped to assert the incompetence of counsel. The circuit court took extraordinary pains to accommodate defendant's desire to retain private counsel. Only when defendant's efforts served to thwart the administration of justice by delaying trial did the circuit court appoint counsel. Moreover, the

assistant public defenders appointed to represent defendant were zealous in their attempts to do so. That they were ultimately ineffective is unfortunate, but is attributable solely to defendant. His attempts to shift responsibility elsewhere must fail.

Under the circumstances shown the circuit court did not fail to comply with Rule 401(a) and the appellate court erred in reversing the judgment.

Defendant states that the appellate court failed to decide several issues which it perceived to be integral to the issue of whether defendant was deprived of effective assistance of counsel. Specifically, defendant's contentions are that (1) he was deprived of his right to be present during the testimony of the State's first witness; (2) he was denied a fair trial when, dressed only in his underwear, he was brought into the courtroom by eight deputy sheriffs; (3) the circuit court erred in failing to discharge the jury or conduct *voir dire* after a 17-day delay between jury selection and trial; and (4) appointed counsel was ineffective when they failed to participate in cross-examining certain witnesses during the sentencing hearing. We note that no written post-trial motion appears in the record and defendant's oral post-trial motion did not specifically enumerate the contentions now presented. Although it would not be inappropriate to hold them waived, we elect to consider them. Defendant argues that if the decision of the appellate court is reversed and his conviction is affirmed the cause should be remanded to the appellate court for the determination of these issues.

Citing *People v. Berland* (1978), 74 Ill. 2d 286, the People urge that this court resolve the issues left undecided by the appellate court. Pursuant to Rule 318(c) (73 Ill. 2d R. 318(c)) certified copies of the briefs filed in the appellate court have been filed in this court. Citing *Illinois v. Allen* (1970), 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057, defendant argues that his right to be present at trial was violated and that his being forcibly brought into the court-

room for purposes of being identified by a witness could have been accomplished by less prejudicial means. The record shows that as the assistant State's Attorney commenced his opening statement he was interrupted by the defendant, who told the jury that he was "being forced to trial against my will." He also insisted that he was not represented by counsel and that the court would not permit him to retain a lawyer. The defendant interrupted the assistant State's Attorney twice more during the opening statement. Upon the calling of the first witness for the People defendant announced "I have an opening statement." The court excused the jury and the lengthy colloquy which then ensued between the court and defendant amply supports the court's finding that defendant had indicated that he did not intend to remain silent.

The record also amply supports the conclusion that defendant had removed his clothing in an effort to prevent his being brought into the courtroom and that the efforts of the deputy sheriffs to fully clothe him prior to his presentation to the jury were unsuccessful. Under the circumstances his exclusion from the courtroom was justified and we find no reversible error.

Concerning defendant's contention with respect to the failure to discharge the jury or conduct additional *voir dire,* the record shows the jury was sworn on March 30, that jury selection was suspended for approximately a week, that Mr. Reilly conducted the *voir dire* and the jury was impaneled on April 9. On April 12 Mr. Reilly moved to withdraw, and his motion was allowed on April 14. The first witness was heard on April 26. The record does not show any communication with the jury or any publicity given this case during the interim period. It is clear from the record that the delays in the trial of the case were the result of defendant's conduct, and he cannot now seek reversal as the result of prejudice which allegedly flowed from that conduct.

Finally we consider defendant's contention that he did

not receive the effective assistance of counsel by reason of their failure to participate in cross-examining certain witnesses during the sentencing hearing. The record shows that defendant had told the assistant public defenders that he did not want them to represent him and did not want motions filed in his behalf, that he had also advised the court that his wife had obtained the services of another *attorney* but that no such attorney entered his appearance in the case. It was only after the court stated that it would consider that no post-trial motions were to be filed and would proceed with a hearing in aggravation and mitigation that defendant requested that the assistant public defenders file a post-trial motion in his behalf. An oral post-trial motion was then made and the matter proceeded to hearing.

Under the circumstances shown it is understandable that the assistant public defenders did not avail themselves of discovery concerning what the People expected to prove at the hearing in aggravation. We have examined the transcript and fail to see in what manner the admissibility of the testimony might have been affected by cross-examination. It is also difficult to assess what effect such cross-examination might have had on credibility, particularly in view of the fact that most of the testimony was corroborated by documentary evidence in the form of jail and court records. We fail to see in what manner the result of the hearing in aggravation was affected, and clearly there was no prejudicial error.

For the reasons stated the judgment of the appellate court is reversed and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*