THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RAY L. SURGES, Defendant-Appellant.

First District (1st Division)    No. 80-2020

Opinion filed November 9, 1981.

Robert H. Farley, Jr., and Robert J. Schmit, both of Blue Island, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean C. Morask, and Paula Carstensen, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant was found guilty by a jury of armed robbery, burglary to commit armed robbery and unlawful restraint (Ill. Rev. Stat. 1973, ch. 38, pars. 18—2, 19—1, 10—3). The trial court vacated the judgment on the burglary and sentenced defendant to concurrent terms of 13 years and 3 years for armed robbery and unlawful restraint, respectively. Defendant appeals his conviction, contending that: (1) he was deprived of a fair trial because of statements made by the State during closing argument, because of the trial court's failure to answer questions posed by the jury and because of the court's dismissal of codefendant at midtrial without explanation; (2) the trial court erred in giving certain jury instructions; (3) the trial court erred in sentencing defendant for unlawful restraint because no judgment had been entered on that offense; (4) he was denied a proper sentencing hearing; (5) the trial court erred in sentencing defendant to 13 years for armed robbery because his sentence was grossly disparate to the sentence received by his co-defendant; (6) he did not have effective assistance of counsel at trial; and (7) the evidence did not establish his guilt beyond a reasonable doubt.

For the reasons set forth herein, we affirm.

The evidence discloses that at approximately 1 a.m. on November 17, 1975, J. Starks was walking east on Chicago Avenue after purchasing an order of barbeque ribs to eat at home. While walking home, Starks noticed co-defendant Monroe Banks leaning against a car parked about 30 feet from the entrance to the barbeque restaurant. Shortly after he first saw Banks, he saw defendant Ray Surges leaning against a wall across from Banks and Philip Smith who was further down the block. As Starks passed Banks and defendant, Banks stuck a gun in Starks' side. Banks then placed a cap over Starks' eyes and Banks and defendant proceeded to walk down the street with Starks between them. Starks testified that while he was walking, someone went through his pockets and removed his wallet, money and keys. Someone then asked Starks if he had any more money and he said that he did not have any more. He was then told that the money which he had was not sufficient and that he would be killed. Starks said that he might have money at home. Subsequently, Starks was placed in the trunk of a car and driven to within a block of his home. At

the time Starks was removed from the trunk, Banks, defendant and Smith were present. These three accompanied Starks to his front door. At this time, the hat was removed from Starks' eyes. Starks then rang the doorbell and knocked on the front door to his home.

Starks' 14-year-old daughter was awakened by the doorbell and went downstairs to open the door. She saw her father with three men and she opened the door after about a minute. She then ran upstairs because she had been sleeping in her undergarments and returned to bed. Starks was led to the couch, where he was struck twice on the head with the gun by Banks. Starks still was wearing the hat when he was put on the couch; however, he testified that he could see from underneath the hat. Starks saw Banks go upstairs while defendant remained in the hallway watching Starks. While upstairs, Banks took the family's foodstamps from the wife. He also forced the daughter to perform a deviate sexual act and he raped the daughter. Banks and the daughter then went downstairs where she saw her father on the couch and Philip Smith in the hallway. The daughter testified that she did not see defendant at this time. Smith raped the daughter in the recreation room of the Starks' home while Banks was upstairs forcing the wife to perform a deviate sexual act. Banks also attempted to rape the wife. The daughter observed Banks and Smith leave the home, although neither she nor her father saw defendant leave.

The daughter telephoned the police after they left the house. At about 2:30 a.m., Officer Zten went to the Starks' residence, where he spoke with Starks, his wife and daughter. Zten radioed a description of Banks and defendant which was heard by Officer Stack and his partner, Officer Spolar. Stack noticed Banks running in the vicinity of the Starks home and saw Banks throw an object into the adjacent bushes. Stack and Spolar stopped their squad car and, upon exiting the vehicle, stopped Banks. Spolar searched the area near Banks and found a revolver. Stack and Spolar then took Banks to the Starks home where the daughter identified him as the person who raped her. Upon searching Banks, the police recovered foodstamps, money and an electrical cord from a television set which belonged to Starks' son. Banks was subsequently transported to the 15th District police station where he was questioned. After Banks was interrogated, four police officers went to the home of defendant. The testimony is contradictory as to whether defendant was fully clothed at the time he came to the door. Defendant told the officers that he had been with Banks, McKinley Williams and Larry Starks earlier and that he and Larry Starks dropped off Banks on Fulton Street and then proceeded home. Defendant claimed that he arrived home at about 10:15-10:30 p.m. and that he fell asleep shortly thereafter; however, one of the officers who went to defendant's home testified that defendant told him that defendant had arrived home at 1:30 a.m. From the testimony, it

appears that John Starks went to the home of defendant with the police officers. Defendant was subsequently transported to the police station, where he was identified as being one of the persons who had been in his home earlier.

On November 19, Philip Smith was arrested at his home. Smith had been identified by the daughter who knew him from school. Smith directed police to another address where a stereo phonograph set was recovered. During the course of the investigation, a woman's coat and a television set also were recovered. Subsequently, the daughter was taken to the police station, where she identified the property as that which had been taken from the Starks' home on the morning of November 17.

The cause proceeded to trial following the indictment of Banks and defendant. Banks waived his right to trial by jury, while defendant was tried by jury. During the trial, the court cautioned the jury on numerous occasions that they were to be concerned only with the guilt or innocence of defendant and not that of his co-defendant Monroe Banks. During the conference on jury instructions, counsel for defendant objected to the use of modified forms of Illinois Pattern Jury Instructions (IPI). The IPI Criminal instructions which deal with the elements of a crime were modified to include a phrase dealing with the accountability of defendant for another's conduct. The basis for the objections was that the instructions failed to provide the jury with adequate guidance on the issue of accountability. The court overruled defendant's objections because it felt that the instructions would be given to the jury as a package and should be considered as such. During the course of considering the evidence, the jury sought the advice of the court concerning matters which arose during deliberation. The court informed the State and counsel for defendant that the jury had requested advice from the court. The court read the questions presented to it to counsel for defendant over the telephone. Defendant's attorney stated that he had no objections to the court, responding to the jury's questions with "You have heard the evidence and you will continue to deliberate." The court stated that it did not believe that it would be proper for it to answer the juror's questions because it would be substituting its judgment for that of the trier of fact. The jury then returned verdicts of guilty against defendant for the unlawful restraint and armed robbery of J. Starks and for burglary to commit armed robbery. The court stated that it would not enter judgment on the guilty finding for unlawful restraint because the crime merged into the offense of armed robbery.

At the sentencing hearing, counsel for defendant was asked whether he was ready to proceed with post-trial motions. Counsel responded that he would not raise any matters in post-trial motions because he was under the impression that the public defender would be handling the post-trial

motions and the appeal of defendant's convictions. Prior to the sentencing hearing itself, the court tendered to the State and counsel for defendant the presentence investigation report. During the hearing, the court vacated *nunc pro tunc* the judgment entered on the burglary finding. The court then sentenced defendant to concurrent terms of 13 years for armed robbery and 3 years for unlawful restraint. Defendant appeals.

Defendant first contends that he was denied his right to a fair trial because of the remarks made by the State during closing arguments, the trial court's unresponsive answers to the questions posed to the court by the jury and by the dismissal of codefendant at midtrial without explanation to the jury. During closing argument, the State argued that defendant wants the jury to believe that "this is all a big conspiracy." Closing argument by the defense made mention of the fact that the jury did not hear testimony from Monroe Banks. In the State's closing argument, the State's Attorney stated that the case disturbed him because "we have got armed robbers and home invaders and rapists all over the City of Chicago." He told the jurors that they prevent anarchy in the streets by being members of the criminal justice system. He further told the jury that the defendant was using the smokescreen defense and the conspiracy defense. He also stated that it would be foolish for him to risk his law license by convicting innocent people. Counsel for the defendant objected to these remarks made during the State's rebuttal argument and the trial court either overruled the objections or instructed the State to continue. The prosecution then began to comment on the evidence and stated, "You don't hear from co-defendants. We can't call co-defendants to testify." The defense objected and stated that the State could call Philip Smith. The trial court sustained this objection. Defendant argues that these remarks were improper and resulted in prejudice to defendant which denied him his right to a fair trial. Defendant also contends that the trial court's answers to questions posed by the jury during deliberation should have been answered. The defendant contends that the answers were to legal questions and not to factual questions and that the court should have responded to avoid confusion. Defendant also argues that the trial court committed error by dismissing codefendant without explanation to the jury. Defendant contends that this resulted in confusion of the jury.

■■ The State argues that defendant waived the issue of improper closing remarks by failing to preserve it in a post-trial motion and by failing to object to some of the remarks made during argument to the jury. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838; *People v. Donald* (1977), 56 Ill. App. 3d 538, 371 N.E.2d 1101.) Assuming that the issue has not been waived, the State contends that the prosecution drew proper inferences from the facts and circumstances established by the evidence. (See *People v. Mitchell* (1975), 35 Ill. App. 3d 151, 341 N.E.2d 153.) The State

contends that it is proper for the prosecution to emphasize the evils of crime (*People v. Griggs* (1977), 51 Ill. App. 3d 224, 366 N.E.2d 581), that it is permissible to comment on the defendant's trial tactics without accusing defense of any misconduct (*People v. Johnson* (1979), 73 Ill. App. 3d 431, 392 N.E.2d 587), and that it is permissible to comment on defendant's use of a "smokescreen" defense when such an interpretation of the defense would be reasonable (*People v. Madden* (1978), 57 Ill. App. 3d 107, 372 N.E.2d 851; *People v. Griggs*). The State argues that even if the remarks were improper, they did not constitute a material factor in defendant's conviction and did not substantially prejudice defendant. (*People v. Moore* (1978), 61 Ill. App. 3d 694, 378 N.E.2d 516.) In response to the defendant's next claim, the State contends that the court acted properly in its decision not to review the testimony with the jury since it is within the sound discretion of the trial court to refuse to answer questions posed by the jury where the questions require the court to make its own evaluation of the evidence or to discuss matters not in evidence. (*People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819.) Concerning the defendant's contention that the court should have responded to the jury's questions concerning why certain individuals did not testify, the State argues that the court properly declined to answer because the jury is to be concerned with the facts established by the evidence and not the legal reasons as to why certain people did not testify. (See *People v. Humphrey* (1980), 89 Ill. App. 3d 673, 411 N.E.2d 1228.) The State urges that the other questions asked by the jury would have required the court to substitute its judgment for that of the jury. (*People v. Williams.*)

■■■ We elect to consider the argument of defendant despite the contention of the State that defendant has waived the issue concerning improper closing remarks. (See *People v. Myles* (1981), 86 Ill. 2d 260.) In determining whether the remarks made by the prosecution are prejudicial, reference must be made to the language used, its relationship to the evidence and its effect upon defendant's right to a fair and impartial trial. (*People v. Mitchell* (1975), 35 Ill. App. 3d 151, 341 N.E.2d 153.) Our consideration of defendant's contention leads us to conclude that the remarks of the prosecution during argument to the jury did not result in prejudice to defendant. Concerning the comment made concerning the State's inability to call the codefendants to testify, we note that the defense first raised this matter in its closing argument and that the court sustained the defense's objection to this remark by the State. Defendant's contention that the trial court erred in not responding to the jury's questions is misplaced. Four of the questions posed by the jury required the court to evaluate the evidence and respond to these questions with a conclusion. Additionally, the questions from the jury are to be literally construed. (See *People v. Williams.*) The remaining three questions

sought the reasons why certain individuals did not testify at trial. The court properly refused to answer these questions since they called for an explanation of the legal reasons as to why the individuals did not testify. (See *People v. Humphrey.*) We also note that counsel for defendant was informed by the court of these questions and did not object to the court's response. Since the tenor of the court's answers to the questions was neutral and since the response of the court to the answers was proper, we cannot say that defendant was prejudiced by the court's failure to answer the questions. The final contention that is raised by defendant concerning his claimed denial of his right to a fair trial is that the court erred in not informing the jury why the codefendant was dismissed at midtrial. Our review of the record disclosed that the jury was repeatedly admonished that it was to be concerned only with the innocence or guilt of defendant and not that of Monroe Banks. Despite these warnings, defendant contends that the unexplained absence of Banks deprived defendant of a fair trial. We disagree. Accordingly, we hold that defendant was not denied his right to a fair trial.

Defendant next urges that the trial court erred in giving modified forms of Illinois Pattern Jury Instructions (IPI) concerning the elements of unlawful restraint and armed robbery. The modified form of IPI Criminal No. 8.07 (1968), which was read over defendant's objection, states in pertinent part:

"To sustain the charge of unlawful restraint, the State must prove the following proposition:

That the defendant, or one for whose conduct he is responsible, knowingly and without legal authority detained either [the daughter], or [the wife], or [J.] Starks."

Defendant contends that the addition of the phrase, "or one for whose conduct he is responsible," to this instruction and an identical modification to the instruction on the elements of armed robbery were improper because it failed to adequately instruct the jury on the issue of accountability. Defendant argues that the court should have used the words "legally responsible" rather than "responsible" in the instruction to avoid misinterpretation of the elements of the crime by the jury. See *People v. Heflin* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367.

The State argues that defendant waived this issue on appeal by his failure to preserve the issue in a post-trial motion. (*People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) The State contends that, assuming defendant did not waive this issue on appeal, these modified instructions were proper under Illinois law since the instructions are considered as a whole and not individually (*People v. Grignon* (1976), 37 Ill. App. 3d 418, 346 N.E.2d 82; *People v. Juve* (1969), 106 Ill. App. 2d 421, 245 N.E.2d 293), and since the

jury was also read IPI Criminal No. 5.03 which defines accountability. The State also urges that the addition of the word "legally" to modify "responsible" is not necessary and does not mislead the jury.

■■ Although it would not be improper to hold that defendant waived this issue by failing to preserve it in a post-trial motion, we elect to consider defendant's contentions. (See *People v. Myles* (1981), 86 Ill. 2d 260.) Since instructions to the jury are to be considered as a whole and not individually when evaluating their propriety (*People v. Grignon; People v. Juve*), a review of the entire set of instructions read to the jury leads us to conclude that the instructions were not misleading or prejudicial. (*People v. Thibudeaux* (1981), 98 Ill. App. 3d 1105, 424 N.E.2d 1178.) In addition to the instructions concerning unlawful restraint and armed robbery, the court also read to the jury IPI Criminal No. 5.03, which sets forth the standard under which one may be convicted under an accountability theory. Defendant's contention that the instructions should have read "legally responsible" rather than "responsible" is also misplaced since IPI Criminal No. 5.03 instructs the jury when a person is "responsible" for the crime of another. Finally, we note that there was sufficient evidence to convict defendant of the two crimes based on his actual participation in the offenses, rather than on an accountability theory.

Defendant next urges that the trial court erred in sentencing defendant for unlawful restraint. He argues that the trial court did not enter judgment on the jury's finding of guilty because the court believed that the offense of unlawful restraint merged into the armed robbery. Defendant contends that the sentence for unlawful restraint should be vacated since it is an "incomplete judgment." See *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.

The State argues that the offense of unlawful restraint does not merge into the armed robbery since the elements of these two crimes differ. The State also contends that the final judgment in a criminal proceeding is the sentence (*People v. Allen* (1978), 71 Ill. 2d 378, 375 N.E.2d 1283), and that it was proper for the court to reconsider its initial determination that unlawful restraint merged into the armed robbery.

■■■ We agree with the position of the State. Unlawful restraint occurs when an individual knowingly without legal authority detains another (Ill. Rev. Stat. 1973, ch. 38, par. 10—3), whereas armed robbery occurs when an individual takes property from another by force or threat of force while armed with a dangerous weapon (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). Knowing detention without legal authority is not an element of armed robbery and, therefore, is not a lesser included offense of armed robbery. Defendant's reliance upon *Lilly* to support his contention that the "incomplete judgment" should be vacated is erroneous. In *Lilly*, the trial court entered judgments on rape and indecent liberties. Upon sen-

tencing defendant, the court sentenced defendant only for rape because the offenses arose out of the same act. The court, however, failed to vacate the judgment entered for indecent liberties. The supreme court granted defendant the relief sought and vacated the "incomplete judgment" pursuant to Supreme Court Rule 366 (Ill. Rev. Stat. 1973, ch. 110A, par. 366). In the instant case, judgment on the unlawful restraint was not entered at the time the verdict was returned. The court, however, did sentence defendant for this offense and the imposition of the sentence constitutes the final judgment. (*People v. Allen.*) Therefore, defendant's contention that he was sentenced improperly by the court because no judgment on the jury's verdict had been entered is without merit.

The defendant also argues that he was denied his right to a proper sentencing hearing because the trial court did not specify on the record the reasons for imposing the sentences for the two offenses. (Ill. Rev. Stat. 1977 and 1978 Supp., ch. 38, par. 1005—4—1.) He also argues that the court failed to indicate whether it had read and considered the presentence report.

The State contends that defendant is precluded from raising this issue on appeal because no objections to the sentence were made to the failure of the court to specify reasons for imposition of the sentences. Had defendant objected at the hearing, the State argues that the court could have supplied the missing statement. (*People v. Davis* (1981), 97 Ill. App. 3d 235, 422 N.E.2d 920.) The State also argues that the omission did not result in prejudice to defendant. *People v. Williams* (1981), 96 Ill. App. 3d 958, 422 N.E.2d 199.

■■ Although it would have been preferable for the trial court to have been specific in setting forth the reasons for imposing the sentence, we hold that defendant is precluded from raising this issue on appeal. (See *People v. Davis* (1981), 97 Ill. App. 3d 235, 422 N.E.2d 920; *People v. Harvey* (1980), 92 Ill. App. 3d 465, 415 N.E.2d 1161.) Had the defendant wanted an explanation of the factors considered by the court in sentencing defendant, he could have requested the court for a detailed recitation of the factors considered by the court. If this had been done, the court could have enumerated the factors which it considered in sentencing defendant. (*People v. Davis*; *People v. Harvey.*) In addition, defendant has failed to establish that he was prejudiced by the court's failure to provide reasons for the sentencing determination. *People v. Williams* (1981), 96 Ill. App. 3d 958, 422 N.E.2d 199; *People v. Harvey.*

Defendant next urges that the trial court erred in sentencing defendant to 13 years for his conviction for armed robbery because it was grossly disparate to the sentence received by his co-defendant. Monroe Banks was sentenced to concurrent eight-year terms for armed robbery, rape, attempted rape and indecent liberties. Defendant argues that the

reason he received a greater sentence is that he was tried by a jury and he put forth a defense to the charges. In contrast, Monroe Banks was tried by the court and put forth a minimal defense to the charges. Defendant urges that his sentence should not be approved by this court because of the gross disparity in his sentence from that received by Monroe Banks. See *People v. Bishop* (1978), 60 Ill. App. 3d 940, 377 N.E.2d 585.

The State argues that the imposition of the sentence is within the sound discretion of the trial court and, absent an abuse of discretion, the sentence should not be disturbed on appeal. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) The State contends that the trial court considered that Banks already was serving a 15- to 30-year sentence for murder. The State also urges that it was proper for the court to consider the defendant's veracity since he testified that he was at home at the time the crimes were being committed. (*People v. Nedelcoff* (1980), 87 Ill. App. 3d 849, 409 N.E.2d 316.) In light of these facts, the State argues that the trial court did not abuse its discretion in sentencing defendant to a greater term than his codefendant.

■■ Although it may appear that defendant's sentence is disparate to that received by his codefendant, a consideration of a number of factors leads us to conclude that the trial court did not abuse its discretion in sentencing defendant to a term of 13 years. As noted by the State, Banks was serving a 15- to 30-year term for another offense. Banks did not put forth a serious defense to the charges, while Surges procured the testimony of two family members to substantiate his "alibi" that he was home during the commission of the crimes. His "alibi" was contradictory to the testimony of the victims and the police officers. Defendant's presence also may have facilitated the commission of the crimes by Banks and Smith. The trial court is normally in a better position to evaluate the appropriate sentence for a defendant. The sentence which the court imposes depends upon a variety of factors, including defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. (See *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884; *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) It is the function of the trial court to fashion a sentence which considers these factors and, in our review of the record, we cannot say that the trial court abused its discretion. *People v. Cox*; see *People v. Frank* (1981), 98 Ill. App. 3d 388, 424 N.E.2d 799.

Defendant next contends that he did not receive effective assistance of counsel at trial. The sole basis for his contention is that his attorney failed to file any post-trial motions. The State contends that the record establishes that defendant's counsel actively participated in pretrial discovery, in objecting to matters raised at trial, in cross-examining the State's witnesses, in presenting witnesses on defendant's behalf and in

making a thorough closing argument. The State urges that the failure of defendant's counsel to raise any post-trial motions would not have affected defendant's convictions had they been raised in post-trial motions. The State argues that there was no substantial prejudice to defendant without which the result of the trial would probably have been different. *People v. Talley* (1981), 97 Ill. App. 3d 439, 422 N.E.2d 1084.

■■ We do not conclude that counsel for defendant was incompetent based upon his performance during the entire proceedings against defendant. In addition, there is no indication that substantial prejudice resulted to defendant which would have altered the result of the trial. (*People v. Talley*.) Aside from counsel's failure to raise matters in a post-trial motion, defendant has failed to cite in the record any specific instances where he did not receive effective assistance of counsel. The failure of counsel for defendant to raise matters in post-trial motions, in and of itself, does not render his representation of defendant ineffective in light of counsel's performance during the entire proceedings against defendant.

Finally, defendant contends that the evidence did not prove defendant's guilt beyond a reasonable doubt. Defendant points to various discrepancies between the evidence presented during the State's case and that presented by the defense. Among the discrepancies in the evidence, defendant argues, are the identification of defendant, the lack of evidence as to whether defendant was armed or threatened any of the victims and the lack of participation by defendant in the crime against the victims.

The State argues that the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt. The State contends that any issues raised by conflicting testimony are to be resolved by the trier of fact. (See *People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666.) The State argues that in this case the evidence established that defendant was one of the robbers on the street and that he stood guard over J. Starks while the crimes were being committed in the Starks' home.

The testimony elicited at trial established that J. Starks had an opportunity to observe defendant both before and during the robbery on Chicago Avenue. While he was on the couch in his home, Starks saw defendant standing in the hallway while Banks and Smith were committing their crimes. Although defendant contends that there was no evidence which established that he was armed or threatened Starks, the evidence does establish that defendant was an active participant in the armed robbery of Starks and was involved in restraining him. Starks also identified defendant in a lineup at the police station. Starks' daughter testified that she saw defendant outside the front door prior to opening the door for her father and the three men. The evidence also established that defendant was present during the commission of the crimes by the

other assailants. Defendant presented evidence which he claims established that Starks was intoxicated at the time of the identification of defendant. He also introduced evidence which he contends establishes that he was at home during the time the crimes were committed. Defendant also presented evidence to show that Starks' daughter did not have an ample opportunity to observe the assailants because the porch light at the Starks' home was not working. Defendant points to a few other instances where he claims the evidence was not sufficient to establish his guilt beyond a reasonable doubt.

A court of review will not set aside a jury's verdict unless the evidence presented at trial is so improbable as to raise a reasonable doubt of guilt. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666; *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313; *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) The credibility of the witnesses is to be evaluated by the trier of fact, and, in this case, the jury believed the testimony of the victims and the police officers over that of defendant and his witnesses. (*People v. Yarbrough.*) The evidence against defendant was overwhelming, and, accordingly, we cannot say the evidence failed to establish defendant's guilt beyond a reasonable doubt.

For the above reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.